EL PASO & SOUTHWESTERN RAILWAY COMPANY v. EMORY A. SMITH.

Decided March 25, 1908.

**1.—Damages—Proximate Cause—Evidence.**

The proximate cause of an event is that which, in a natural and continuous sequence unbroken by any new, independent cause, produces the event, and without which the event would not have happened. In a suit for personal injuries received by a car repairer while in the discharge of his duties, evidence considered, and held to show that the negligence of the master was the proximate cause of the injuries.

**2.—Negligence—Incompetent Servant—Duty of Master.**

The duty of using ordinary care to select servants of sufficient care, skill, prudence and good habits to make it probable that they will not cause injury to each other, and to dismiss servants who show such a want of these qualifications as to give reasonable ground for apprehension that they will injure their fellow servants, are duties personal to the master, and cannot be delegated.

**3.—Same—Assumed Risk.**

A servant must not only know of a defect in an instrumentality, whether animate or inanimate, furnished by his master, but must know or be charged with knowledge of the danger that may probably ensue from its use, before he can be held to have assumed the risk of such known defect.

**4.—Charge—Evidence.**

A requested charge which assumes the existence of evidence not, in fact, before the jury, is properly refused.

**5.—Servant—Reputation—Proof.**

A servant's general reputation of incompetency is admissible for the purpose of charging his master with knowledge of his incompetency in employing and retaining him in service.

**6.—Evidence—Exclusion on Motion—Practice.**

Injurious testimony carelessly or deliberately elicited by a party will not, in the discretion of the court, be thereafter withdrawn from the jury upon the motion of the party eliciting the same.

ON REHEARING.

**7.—Foreign Law—Presumption—Judicial Cognizance.**

In the absence of evidence to the contrary, the presumption is that the law on a given matter is the same in other States and in the Territories as in this State. Courts will take judicial cognizance of an Act of Congress organizing a Territory, but not of the laws passed by the Legislature of such Territory, nor of the decisions of its courts.

**8.—Master and Servant—Vice Principal.**

An employe charged with the duty of keeping a place safe to work in is a vice-principal of the master regardless of the rank of the servant to whom the duty is entrusted, and the negligence of such servant is the negligence of the master.

**9.—Assignment of Error.**

An assignment of error should distinctly specify the ground relied upon for a reversal of the judgment, and ought ordinarily to be complete in itself, but if it is not, whatever in the record is essential to an intelligent ruling upon it should be set forth in the statement under the assignment.

**10.—Evidence—Objection.**

An objection to evidence that it is "incompetent, irrelevant and immaterial" is too indefinite to require consideration by an Appellate Court, unless the real nature of the objection to the testimony is so plain that the general phrase is sufficient to indicate it.

**11.—Witness—Expert—Competency.**

Whether or not a witness is qualified to testify as an expert is a question for the court. Evidence considered, and held sufficient to support the ruling of the court admitting the testimony of a witness as an expert upon the competency of an employe to perform the duties entrusted to him by the master.

Appeal from the District Court of El Paso County. Tried below before Hon. J. M. Goggin.

*Patterson, Buckler & Woodson,* for appellant.—The question as to whether or not Delevan was an habitual drunkard, ·or whether he drank at all, at the time of the plaintiff's injury, and also as to whether he was then a competent man to perform the duties of foreman of the rip track, were disputed questions of fact, on which questions the evidence was entirely contradictory, and for these reasons the witness Morris should not have been allowed to give his mere opinion as to Delevan's competency. United Oil & R. Co. v. Gray, 102 S. W. Rep., 934; Armendaiz v. Stillman, 67 Texas, 462; Brown v. Mitchell, 88 Texas, 358; Vance v. Upson, 66 Texas, 483-490; Galveston, H. & S. A. Ry. v. Davis, 4 Texas Civ. App., 477; 17 Cyc. of Law & Procedure, 25 to 60; Stoll v. Daly Mining Co. (Utah) 57 Pac., 298; Mosnat v. Chicago & N. W. Ry., (Iowa), 86 N. W., 298; Langston v. Southern Elec. Ry., (Mo.), 48 S. W., 837; Boettger v. Scherre & K. A. Iron Co., 136 Mo. 531 (38 S. W., 298); Gutridge v. Missouri Pac. Ry., 94 Mo., 468, (7 S. W., 476); Teerpenning v. Corn Exchange Ins. Co., 43 N. Y., 279; Spaulding v. Chicago, St. P. & K. Ry., 98 Iowa, 205, (67 N. W., 227); Wheelan v. Chicago, M. & St. P. Ry., 85 Iowa, 167, (52 N. W., 119); Wilson v. Reedy, (Minn.), 24 N. W., 191; Hicks v. Southern Ry., (S. C.), 38 S. E. 725 and 866; Purkey v. Southern Coal & Trans. Co., (W. Va.), 50 S. E., 755; 2 Jones on Evidence, sec. 383; Cherokee & Pittsburg C. Mining Co. v. Dickson, 55 Kan., 62, (39 Pac., 691); Moore v. Chicago, Q. & B. Ry., (Ia.), 54 Am. Rep., 26; Muldowney v. Illinois Cent. Ry., 36 Iowa, 462; Hamilton v. Des Moines V. Ry., 36 Iowa, 31; Bélair v. Chicago & N. W. Ry., 43 Iowa, 662; 2 Jones on Evidence, sec. 374, and many cases there cited.

The testimony of the witness Climne that he had seen Delevan under the influence of intoxicating liquors during the period of his service with the defendant, without any statement as to how much he was under the influence of liquor and without any statement as to when this was, should not have been admitted. Galveston, H. & S. A. Ry. v. Davis, 92 Texas, 375; Heland v. Lowell, 3 Allen, 407; McCarty v. Leary, 118 Mass., 510; Langworthy v. Township of Green, 88 Mich., 207.

*Beauregard Bryan* and *R. V. Bowden,* for appellee.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by the appellee against appellant to recover damages for personal injuries alleged to have been inflicted by the negligence of the defendant.

The plaintiff alleged in his petition that on the 27th day of June, 1903, he was in the employ of the defendant company as a carpenter and car repairer in its shops and yards in the city of Douglas, Territory of Arizona; that extending from and connected by a switch with other tracks in the yard, was a track running into appellant's shops, called the "rip" or "repair" track, upon which disabled cars, or such as needed repairing, were placed to be repaired by defendant's car repairers. That the rules and customs of the company required that a blue flag should be placed at or upon the car nearest to the switch connecting the "rip track" with the others for the purpose of indicating. that engines or cars could not be run upon such track while the flag was up—the flag being in the nature of a command inhibiting cars or engines being 'run upon the track, and an assurance to employees, working upon cars thereon, that they were safe from the danger of engines or cars being placed upon that track while they were at work. That at the time stated, one George Delevan was, and had been for some time prior thereto, in defendant's employ as foreman of the car repairers and known as the "Boss car repairer," who had control of the "rip track" where damaged cars were placed for repair, and whose duty it was to see that the flag was kept flying in its proper place when defendant's employees were at work on cars upon that track, and to remove the flag when it became necessary for an engine to place cars on that track or take them therefrom; that the. rules of the company required him, as such foreman, to personally notify all of the employees at work in repairing cars upon the rip track, before removing the flag, that it would be removed for the purpose of letting engines run thereon, and that he was not authorized to remove the flag until he had notified such employees that he would do so. That on the day stated a number of damaged cars were standing upon the rip track for the purpose of being repaired, and defendant's carpenters and repairers were engaged thereon at work in repairing them. The plaintiff being at work on the car furthest from the switch near the end which was nearest the switch, the car being entirely separated and disconnected from any other car upon the rip track; that while so at work, Delevan, without giving him notice or warning, removed the blue flag from the end of the car next to the switch for the purpose of letting an engine run thereon in order to take off a disabled car which was filled with coke, for the purpose of unloading it so that it might be repaired. That plaintiff received no notice of the removal of the flag, and being ignorant of the fact of its removal and that an engine was coming upon the track, continued at his work, and while so at work the engine was run on the track, and struck the car loaded with coke, and, failing to couple, knocked it against the car next to it, and that car in turn struck the next one and it in turn the next, and so on until the car that plaintiff was at work on was struck, and he was thereby caught between it and the car thus pushed against it, and seriously and permanently injured; that the action of Delevan, the boss car re-

pairer, in removing the flag without giving notice to plaintiff thereof, and causing the engine to be brought upon the rip track was negligence. "That Delevan was an incompetent man for the position which he held, and grossly negligent and careless in the performance of the duties thereof, and was an habitual drunkard and habitually drunk in the performance of his said duties as boss car repairer, which facts were to plaintiff unknown, but were to the defendant well known, or, by the exercise of reasonable care and diligence, might have been known to defendant, yet, notwithstanding this, defendant employed and retained in its employ the said Delevan." That by reason of the premises plaintiff's injuries were inflicted by the negligence and carelessness of defendant through its agent and servants, to his damage, etc.

The defendant answered by a general denial and pleas of contributory negligence, assumed risk and negligence of a fellow servant. In connection with the latter pleas the defendant pleaded that the common law in regard to the doctrine of assumed risk then obtained in the Territory of Arizona, and was not affected or modified by any statute.

The case was tried before a jury and the trial resulted in a verdict and judgment in favor of plaintiff for $8,000.

*Conclusions of Fact*:—We conclude that the plaintiff was injured by the negligence of the defendant, as alleged in his petition, and that his injuries were not proximately caused by any negligence on his part or of a fellow servant, but were the direct result of defendant's negligence, as alleged in his petition, and that he was damaged by reason of such injuries in the amount found by the jury.

The evidence upon which these conclusions are based will be stated at some length in connection with our conclusions of law.

*Conclusions of Law*:—1. The first assignment of error, which complains of the refusal of the court to peremptorily instruct a verdict for defendant, requires a statement of so much of the evidence as is necessary to be considered in determining the question whether the requested charge should have been given.

In its yard at Douglas, Arizona, the defendant maintained a track, extending from other tracks into its repair shops, which was designated by the witness as the "repair" or "rip" track, upon which were placed damaged or disabled cars to be repaired. The damaged cars were repaired by defendant's mechanics while standing on this track; and to protect its servants while working on them there, a rule and custom of the company required a blue flag to be placed and kept at the switch, or on the end of the car nearest thereto, which connected the rip track with the other tracks in the yard. The presence of the flag was a signal of command to those operating locomotives or moving cars in the yard not to run them on this track, and a symbol of safety to those at work in repairing cars thereon from any danger from engines or cars being run upon it.

When it was desired to have a locomotive come upon this track for any purpose, the rule and custom of defendant required that all

of the employees working there should be personally warned of it before the flag could be removed; and, then, when it was removed, its absence signified a permission or was regarded as an invitation to operators of locomotives in the yard to run their engines or cars onto the rip track if they had occasion to do so.

On June 27, 1903, a number of cars were standing upon the rip track, the one farthest from the switch being separate from the others. The plaintiff, in the performance of the duties of his employment, was under this car engaged in repairing it. While so engaged the blue flag, which had been placed on the end of the car nearest the switch, was removed by George Delevan, who was defendant's servant in control of the rip track, and of its employes engaged in repairing cars thereon and who was known as the Boss repairer. He removed the flag in order to let an engine go on the track to take off a disabled car loaded with coke which could not be repaired without unloading it. He testified that when he removed the flag he called out, loud enough to be heard five hundred feet, to those at work on the track, "They are coming in after the cars." The plaintiff did not hear the call, if it was uttered; and, without notice of and in ignorance of the fact that the flag had been removed and that an engine was coming on the track, he continued at his work under the car. Though Delevan testified that he did not give the engineer a signal to move his engine on the track, another witness testified positively that he did. This however is a matter of no moment; for the undisputed testimony shows that the engineer was near the switch waiting for permission to run on the rip track and that he saw Delevan take down the flag, which act was itself a signal for him to proceed. In accordance with the signal the engine was run onto the track and against the car loaded with coke and failing to couple thereto the impact knocked it against the next car and it in turn against the next and so on until the car on which plaintiff was at work was struck, thereby catching him and pinioning him between the drawheads of the cars, whereby he was seriously and permanently injured. There was evidence tending to show that Delevan was incompetent to discharge the duties of his employment by reason of his being an habitual dunkard, and that defendant knew, or by the exercise of ordinary care could have known, of such incompetency when it employed him and while he was in its service.

It is contended by this assignment that it appears from the evidence, as a matter of law, that the removal of the flag was not the proximate cause of plaintiff's injuries, but that it was the propulsion of the engine against the car for the purpose of making the coupling. We believe the bare statement of the evidence is a refutation of this contention. The proximate cause of an event is that which, in a natural and continuous sequence unbroken by any new, independent cause, produces the event, and without which the event would not have occurred. It would be hard to conceive of a case in which the evidence brings it so clearly within this definition as the case at bar. All the elements of "proximate cause" embraced in the definition are presented by the evidence so clearly and distinctly that the definition itself could be evolved from the facts, without taking anything from

or adding anything to them. San Antonio & A. P. Ry. Co. v. Stevens, 83 S. W., 234; Wehner v. Lagerfelt, 27 Texas Civ. App., 520.

2. The refusal of the court to instruct the jury that if it believed from the evidence that plaintiff's injuries were proximately caused by the negligence of any other servant than Delevan to find for defendant, is the ground of the second assignment of error. The substance of the proposition advanced is that there being evidence from which the jury might have found that the switchman was negligent in signalling the engineer to move in on the rip track, if such negligence was found by the jury and was the proximate cause of plaintiff's injuries, he was not entitled to recover.

In the statement under this proposition it is said "that the engineer Stoller, testified that Delevan did not signal him to go on the rip track, but this signal was given him by the switchman." The engineer testified, "Delevan removed the flag and let me come back against the cars, but they did not couple. . . . When I went to make the coupling the switchman signalled me in." This shows that the engineer went on the track upon the invitation of Delevan, extended by his removal of the flag. Had it not been removed the engineer would not have gone on the track with the engine, even if signalled by the switchman. The flag being removed for the purpose of letting the engine come on the track, it could not have been negligence in the switchman to give the engineer the signal. The signal from the switchman simply indicated to the engineer that the switch which connected the main track with the rip track had been so adjusted that he could run his engine from the one on to the other and was such as is always given on such occasions. It was not incumbent on either the engineer or switchman to warn employes repairing cars on the rip track that their engine was coming upon it. The duty had been entrusted by their master to Delevan, who had been placed in control of the track, and they had the right to presume that he had performed this duty before he invited the engineer, by removing the blue flag, to come on the track. There being no evidence tending in the least to show that the switchman was negligent in signalling the engineer, the requested charge was properly refused.

3. The assignment of error directed against a part of the eighth paragraph of the court's charge is, when the entire paragraph is read in connection with the entire charge and special charge No. 6 given at defendant's request, manifestly untenable. As has been seen from our statement of the pleadings, it is specifically charged in plaintiff's petition that Delevan was an incompetent man for the position which he held, and negligent and incompetent in the performance of the duties thereof, and that he was habitually drunk in the performance of his duties as Boss car repairer; that such facts were unknown to plaintiff, but were known to the defendant, or by the exercise of reasonable care could have been known to it, "yet notwithstanding this, defendant employed and retained in its employ the said Delevan." These allegations are a complete refutation of appellant's first two propositions under the assignment. The statement of facts appearing in the record refutes the other proposition,

which is that there was no evidence that Delevan was in any way incompetent at the time he was employed by defendant.

4. There was no error in the refusal of special charge No. 9, requested by the defendant. If its substance was not embraced in the main charge, so much of it as is the law was fully covered by special charge No. 6, given at defendant's request. The duty of using ordinary care to select competent servants, that is, servants of sufficient care, skill, prudence and good habits to make it probable that they will not cause injury to each other, and to dismiss servants who show such a want of these qualifications as to give reasonable ground for apprehension that they will injure their fellow-servants, are duties personal to the master. Shear. & Redf., Neg. sec. 191; Woods' Master and Servant, sec. 417. If there is a lack of ordinary care on the part of the master to discover the incompetency of the servant, either at the time of or subsequent to his employment, there is a breach of this personal duty. If the incompetency, in the exercise of this care, is discovered by the master before he employs the incompetent servant, there is a manifest breach of duty on the part of the master to his other servants, in employing him. If, though ordinary care was used in employing the servant, the fact of his incompetency is discovered by the master afterwards, then there is a breach of his duty to his other servants in exposing them to the risks of an incompetent fellow-servant. This breach of duty, in either event, is negligence, and if it be the proximate cause of an injury to a servant the master is liable.

This duty of the master is analogous to that which he owes to his servants in furnishing them with instrumentalities to do their work; in the first place, he must exercise ordinary care to furnish them with such as are reasonably safe; and in the second, he must exercise ordinary care, or inspection, to keep or see that such instrumentalities are kept reasonably safe for his servants' use. If, in the exercise of this care, in either instance, he discovers that the instrumentalities are defective, then it is his duty as a matter of law to discontinue the use of such defective instrumentalities. Likewise is it his duty to discontinue the use of a servant when he discovers that he is incompetent to discharge the duties of his employment. If, therefore, Delevan was incompetent to discharge the duties of his employment and the defendant knew of his incompetency, there was no question about it being negligent in retaining him in its employment. Wherefore the special charge was properly refused, because it made plaintiff's right of recovery depend upon whether it was negligence in defendant to retain Delevan in its employ after discovering that he was incompetent to discharge the duties of his employment.

5. The fifth special charge requested by defendant was properly refused, because plaintiff's knowledge or imputed knowledge of incompetency and lack of sobriety of Delevan would not defeat his action against the company unless he knew or must have necessarily known of the danger incident to his incompetency. A servant must not only know of a defect in an instrumentality, whether animate or inanimate, furnished by his master but must know or be charged with knowledge of the danger that may probably ensue from its use,

before he can be held to have assumed the risk of such known defect. Besides, so much of the charge as was proper was included in the main charge and special charges given at defendant's request.

6. It does not apear from the statement in appellant's brief under the sixth assignment of error that the warning there stated as given by Delevan, after he removed the blue flag, of the approach of the engine on the rip track, was the usual and customary warning of the approach of such engine, and, in the absence of evidence (which should be contained in such statement) tending to show that it was the usual and customary warning, it can not be held that the court erred in refusing appellant's fourth special charge.

7. There was no error in admitting the testimony of the witness, Fred Morris, as is complained of in the seventh assignment. Terrell v. Russell, 16 Texas Civ. App., 573; St. Louis & S. F. Ry. v. Smith, 90 S. W., 929; Galveston, H. & H. Ry. v. Bohan, 47 S. W., 1050; Galveston, H. & S. A. Ry. v. Heming, 39 S. W., 302; Missouri, K. & T. Ry. v. Schilling, 75 S. W., 66; McCabe v. San Antonio Traction Co., 88 S. W., 387; San Antonio Traction Co. v. Flory, 100 S. W., 201. The opinions cited answer all the propositions under this assignment, as well as those under the fourteenth, fifteenth, sixteenth, seventeenth, eighteenth, nineteenth and twentieth assignments of error. See also, 3 Wigmore on Ev. sec. 1974, and cases cited in note 1; Lawson Expert and Opinion Ev. (2nd ed.), 505, rule 63.

8. When the entire testimony, embodied in the bill of exceptions, of the witness Seebree is read it is apparent that the witness could not have been understood by the jury as meaning that he heard men who worked with Delevan say that "his reputation for being careless and reckless was not very good." For in the next sentence he states his meaning in using the words above quoted as follows: "I mean I have heard men say he was very careless about handling his work at times." A servant's general reputation of incompetency is admissible for the purpose of charging his master with knowledge of his incompetency in employing and retaining him in his service (East Line & R. R. Ry. v. Scott, 68 Texas, 694); and, upon this issue, we believe the testimony complained of by the twenty-first assignment of error was properly admitted.

9. W. L. Spaulding, a witness for defendant, on re-direct examination by defendant's counsel testified:

"I have heard of Mr. Delevan being drunk on duty while he was foreman of the rip track. Q. State when it was? A. I believe it was Fred Morris that told me about it. Q. When? A. I am not sure, it seems to me about a year ago. Q. I mean during that time, not since? A. No, sir. Q. I mean during the time you were working up there with Delevan. A. No sir. Upon to June 27, 1903, I never heard of Delevan's being drunk on duty."

Upon cross-examination by plaintiff's counsel this testimony was reiterated by the witness. Thereupon defendant's counsel moved the court to exclude such testimony from the jury. The court refused to grant the motion on the ground that the testimony had been elicited

by defendant's counsel. This ruling is the subject of the twenty-third assignment of error. We think the court ruled correctly. After the witness had testified that he had heard of Delevan being drunk while he was foreman of the rip track, and stated that he believed it was Morris who had told him about it, counsel for defendant asked: "When?" This question was not confined to a time prior to the occurrence of the accident. It was deliberately asked by counsel, knowing that it might be answered as it was as well as in another way. That the answer was not deemed advantageous to defendant, furnishes no ground for the exclusion of the testimony which was elicited by its counsel. If counsel did not know what his witness would answer, he took his chances on eliciting testimony favorable to his client, and the defendant should not be heard to complain because its effect was different.

10. The court did not err in overruling defendant's motion to suppress the deposition of T. J. Morris. El Paso & S. W. Ry. v. Barrett, 101 S. W., 1026; Young v. Pecos County, 101 S. W., 1057.

11. There was not a particle of evidence tending to show that at the time plaintiff was injured he was not in the exercise of ordinary care for his own safety. Therefore special charge No. 3, requested by defendant, was properly refused.

12. The court did not err in refusing special charge No. 5, requested by defendant, because it is embraced in the tenth paragraph of the court's charge in the same form and almost the same words.

13. What we have said in disposing of the first assignment demonstrates that the failure of the engine to couple to the car can not be regarded as the proximate cause of plaintiff's injuries. This was not a new or independent cause, but a sequence of Delevan's negligence in removing the blue flag. Therefore the court did not err in refusing to give special charge No. 7 requested by defendant's counsel.

14. There was no error in the court's refusal of special charge No. 8, because it was given in the same form and in language of the same meaning in the ninth paragraph of the main charge.

15. That part of the fourth paragraph of the court's charge which is complained of in the twenty-ninth assignment of error, when read in connection with the entire context, was eminently proper and correctly stated a principle of law applicable to the issues in the case.

16. That part of the seventh paragraph of the charge is not obnoxious to the objections urged against it by the thirtieth assignment of error. The plaintiff's petition alleged that Delavan was "an incompetent man for the position which he held and grossly negligent in the performance of his duties" and did not limit his incompetency to the cause of drunkenness. And notice to Struthers, the defendant's vice-principal and master mechanic, of such incompetency was notice to the company.

17. The question as to whether Delevan gave the plaintiff sufficient warning of the fact of the removal of the flag, if the insufficiency of such notice was not shown by the evidence as a matter of law, was one of fact for the jury, and the court did not err in submitting such question for its determination.

18. It conclusively appeared from the undisputed evidence, that

Struthers was the defendant's vice-principal, and the court did not err in so informing the jury in its charge.

19. The court's supplemental charge, when read in connection with the main charge and the special charge given at defendant's request, is not open to the objections urged against it in the thirty-third assignment of error.

20. The court's response to the question propounded by the jury after its retirement was only such as was proper to be made, in view of the fact that the jury had been fully instructed on all the issues in the case arising from the pleadings and evidence.

There is no error in the judgment and it is affirmed.

### ON MOTION FOR REHEARING.

If it ever becomes the duty of a court to apologize to counsel for an opinion it has rendered against their client, as the spirit and tone of this motion seems to imply, we beg to remind counsel for appellant that their thirty-four assignments of error, insisted upon in their brief, were exploited by numerous propositions which required more time to consider than is ordinarily given to the determination of a case on appeal; and to humbly state (though not without fear of contradiction) that they were all thoroughly considered, and such expression of the conclusions reached as was deemed essential to their disposition was given in the opinion, and that the proximate cause of its being laconical in disposing of some of the assignments was the pendency of appeals of other parties who under the law were thought to be entitled to their day in court.

Aesop sought to teach by a fable the impossibility of pleasing everybody; but the poor old fellow was a slave and, in consequence, little heed has been given his lesson; for still men like to please and be pleased, especially judges and lawyers. Therefore, by way of further apology and with the hope of pleasing appellant's counsel, as far as it is legal to do so, we will, in disposing of this motion, elaborate upon points considered in the original opinion and express our reasons more fully for overruling the assignments of error, especially those which counsel baldly assert were given no consideration at all.

If further reason is demanded for our conclusion "that plaintiff's injuries were not proximately caused by any negligence on the part of a fellow-servant, but were the direct result of defendant's negligence," we beg leave to state that nowhere in appellant's brief are we pointed to any part of the record for evidence to show that the fellow-servant doctrine as it obtains at common law existed in the territory of Arizona at the time plaintiff was injured. In the absence of such evidence the presumption should be indulged that the law where the injury occurred is the same as in this State. Tempel v. Dodge, 89 Texas, 69; Whaley v. Bankers Union, 88 S. W., 262; Southern Kansas Ry. v. Curtis, 99 S. W., 567; Western U. Tel. Co. v. Sloss, 100 S. W., 355. While we take judicial cognizance of the Act of Congress organizing the Territory of Arizona we are not charged with notice of the laws passed by its Legislature. If, however, it should be conceded that it was proved that the common law is the

rule of decision in that Territory, we can not, in the absence of proof, take cognizance of the construction placed upon it by the Supreme Court of that Territory; and must presume that the construction of the common law applicable to the facts involved in a case like this received either the construction placed upon it by the Supreme Court of the United States or by the courts of this State. In construing the common law doctrine of fellow servant, it is held by the Supreme Court of the United States, as well as by the Supreme Court of Texas, that an employe charged with the duty of keeping a safe place to work is a vice principal of the master, regardless of the rank of the servant to whom the duty is entrusted. Northern Pac. Ry. v. Herbert, 116 U. S., 647, 29 L. ed., 755; Union Pac. Ry. v. Daniels, 152 U. S., 689, 38 L. ed., 579; Hough v. Texas & P. Ry. Co., 100 U. S., 213, 25 L. ed., 612; St. Louis, S. F. Ry. v. George, 85 Texas, 155; Houston & T. C. Ry. v. Marcelles, 59 Texas, 337; Missouri Pac. Ry. v. James, 10 S. W., 332; Texas & Pac. Ry. v. O'Fiel, 78 Texas, 489; Railway v. Wise, 106 S. W., 466. Under the common law as thus expounded, Delevan was not the fellow servant of the plaintiff but the vice principal of defendant; for he was charged by the railway company with the duty, which was personal to it and nondelegable, of keeping the rip track reasonably safe for the plaintiff, and other employes at work there, for them to do the work they were put to do there by their employer. If then, as we held in our original opinion, the collision which resulted in plaintiff's injury was proximately caused by Delevan's removal of the blue flag and inviting the engineer to drive his engine upon the track, the negligence which caused plaintiff's injury was not that of a fellow-servant, but the negligence of the defendant itself. Under this view of the case, which we refrained from expressing out of deference for counsel, and are now induced to expose by this motion, it is wholly immaterial whether the defendant was guilty of negligence in employing Delevan or whether he was incompetent to discharge the duties of his employment, or not. That this act of negligence, attributable to defendant and not to a fellow-servant, was the proximate cause of plaintiff's injuries, does not admit of the shadow of a doubt by any one familiar with the elementary principles of the law. In addition to the authorities cited in the original opinion upon the subject of "proximate cause," we venture, at the risk of having it pronounced inapplicable by appellant's counsel, to cite the case of Russell v. German F. Ins. Co., 10 L. R. A. (N. S.), 326, where it is said: "Whatever may have been the original meaning of the maxim, *causa proxima et non remota spectatur,* it has been clearly settled by a long line of decisions that what is meant by proximate cause is not that which is last in time or place, not merely that which was in activity at the consummation of the injury, but that which is the procuring, efficient and proximate cause."

From this we desire, without offense to appellant's counsel, to pass to the eighth ground of this motion which complains of our not sustaining the seventh assignment of error, which is: "The trial court erred in admitting in evidence, over objection of defendant, the testimony of Fred Morris as shown by defendant's bill of excep-

tions No. 3." The bill of exception referred to in the assignment is not copied in the statement under it in the brief, as is required by the rules of this court. An assignment of error should distinctly specify the ground relied upon for a reversal of the judgment, (art. 1018, Rev. Stats. of 1895) and ordinarily ought to be complete in itself; and if it is not, and there is something else in the record essential to an intelligent ruling upon it, the latter, at least, should be embraced in the statement in the brief under the assignment. Robertson v. Coates, 1 Texas Civ. App., 644; Poland v. Porter, 98 S. W., 214. It may, therefore, be doubted whether the assignment should have been considered at all. But by reference to the record it will be seen that after the witness, Fred Morris, had testified "that he knew the habits of George Delevan with reference to sobriety or drunkenness during his employment by defendant prior to April, 1903; that he was drunk a good deal of the time; that he had seen him drunk frequently prior to May 3, 1903, and had taken care of him when he was so drunk he could not perform his duties; that during the time he, witness, was employed, he had seen Delevan, at least twenty times so drunk he could not perform his duties," he then testified, over objections of defendant, as follows: "I believe I am capable of judging the competency or incompetency of a man who could safely and properly perform the duties of foreman of car repairers. Taking into consideration all the facts and circumstances, and what I know of his habits up to the time I last saw him, on May the 3d, 1903, George Delevan was not a competent man to perform the duties of car repairer in the Douglas yards." The testimony indicated by the quotation marks was objected to by defendant's counsel "for the reason that it was incompetent, irrelevant and immaterial, and the witness had not shown himself qualified to pass upon and should not be allowed to pass upon the competency of Delevan." It is a rule that an objection to testimony not made in the trial court can not be considered on appeal. It is also well settled that the objection, "incompetent, immaterial and irrelevant" is not specific enough, unless the real nature of the objection to the testimony is so plain that the general phrase is sufficient to indicate it. 1 Wigmore on Ev., sec. 18, p. 58, and cases cited in note 18. As is there said, "Certainly it is not fair to allow such a general drag-net as 'incompetent, irrelevant and immaterial' to be cast over every bit of evidence in the case which counsel would like to keep out, and then to permit counsel, upon careful analysis of the printed narrative of the trial, to formulate some specification of error, not thought of at the time, and which, if seasonably called to the court's attention, might have been avoided or corrected."

If then, we discard the phrase "incompetent, irrelevant and immaterial" as being too general to require consideration, we have the only objections (1) that the witness had not shown himself qualified to pass upon the competency of Delevan to perform the duties of foreman of car repairers in the Douglas yards; and (2) he should not, for that reason, have been allowed to pass upon the competency of Delevan to perform such duties. At least this is the proper analysis of the remaining objection. Whatever there is in the propo-

sitions asserted under the assignment, which extends beyond the objection as thus analyzed, can not be considered. The witness was an old railroad man, familiar with the character of the work to be done in defendant's yards, the danger attending; knew the necessary precautions to protect employes in the yard from danger, the duties of a foreman of the car repairers at work there, what habits and qualifications he should possess to be able to efficiently discharge such duties; in short, he was an expert on such matters. His testimony taken as a whole clearly shows this. He knew Delevan's capacity for the work, his character and habits, knew that he was an habitual drunkard, for he had frequently seen him drunk and at times so drunk that he could not take care of himself. This was enough to qualify him as an expert to give an opinion upon the question whether a man of Delevan's character and habits was competent to discharge the duties entrusted to him, and it was not essential that he should state any opinion as to his own capacity to express an opinion of Delevan's competency. This was a matter going to the competency of the witness to be determined by the court. If, however, it were essential that he should state his competency to give such an opinion, it is clear that by his statement, that he believed he was capable of judging of the competency or incompetency of a man who could safely perform the duties of foreman of car repairers, he meant to express an opinion as to his competency in that regard.

This disposes of the only matters raised by the objection to the testimony of the witness—his competency or qualification as an expert to testify to the competency of Delevan. It was not objected that expert testimony was not admissible upon the issue of Delevan's competency to discharge the duties of foreman of defendant's car repairers; for the objection to the testimony made in the trial court impliedly admits the admissibility of expert testimony upon such an issue, but urges only that the witness was incompetent to give such testimony. However, we have no doubt that the admissibility of expert testimony upon the issue was competent. United Oil & F. Co. v. Grey, 102 S. W., 935. If appellant's contention that such testimony could not be received upon the issue as to the competency of Delevan, could be evolved from the objection made in the trial court to the testimony under consideration so as to require us to pass upon it, we should say the contention is fully met and answered in Wigmore on Ev., secs. 1919, 1920, 1921.

The twenty-third ground for a rehearing, set out in this motion, is, that the court erred in its failure to consider and pass upon the appellant's eighth, ninth, eleventh, twelfth and thirteenth assignments of error. The eighth assignment of error is as follows: "The trial court erred in admitting in evidence over the objection of defendant the testimony of Fred Morris as shown by defendant's bill of exceptions No. 2." The testimony referred to in the assignment as it appears in the bill of exceptions is: "As general foreman the intoxication of Delevan did incapacitate him, and he was not a competent man when he was intoxicated." The objection to it, as disclosed by the bill of exceptions, is, "that it was incompetent, irrelevant and immaterial, and a mere conclusion of the witness, and the witness

was not qualified to give an opinion in regard to this matter." When we dispose of the phrase "incompetent, immaterial and irrelevant," as we did in passing upon the seventh assignment, by holding that the objection it embodies is too general to be considered, none of the propositions asserted under the assignment has anything in the record to support it, and to consider any one of them would be to pass upon an objection to the testimony not raised in the trial court.

The ninth assignment of error is as follows: "The trial court erred in admitting in evidence the testimony of J. F. Morris, as shown by defendant's bill of exceptions No. 5." The testimony referred to, as it appears in the bill of exceptions, is: "I did not think Delevan was a competent man for the performance of the duties of foreman of car repairers in the Douglas yards at the time plaintiff was hurt, in other respects than his habit of drinking; but from his actions and what he done, I do not think he was." The objection made to the testimony was, "That it was incompetent, irrelevant and immaterial, states the conclusion of the witness, and the witness has not shown himself qualified as to the competency or incompetency of Delevan." We will dispose of the general objection, "Incompetent, etc.;" by disregarding it as we have done in the preceding assignments. We can not determine from the statement in appellant's brief. whether the witness was qualified to give an opinion upon Delevan's competency or not, for there is not a word stated in the brief upon the question. We are not required to search the record for the purpose of ascertaining whether the witness was qualified to give an opinion upon the subject, and in the absence of a statement in appellant's brief of evidence to show the witness was not so qualified, we will presume, in favor of the ruling of the trial court, that he was. We have shown before that the matter testified to was such as an expert might give his opinion upon.

The tenth assignment is, "The trial court erred in admitting in evidence over the objection of defendant, the testimony of Andrew Clemne, as shown in defendant's bill of exceptions No. 7." The testimony referred to as shown by the bill of exceptions is: "I am capable of judging of the competency or incompetency of the man who could safely and properly perform the duties of foreman of the car repairers, such as were required by Delevan in his capacity as such foreman. Taking into consideration the habits of said Delevan, even during the time I was employed with him, I do not think he was a safe or competent man to hold such position and perform the duties of foreman of car repairing." The objection of defendant to the testimony was "that it was incompetent, irrelevant, immaterial, stated the conclusion of the witness, and the witness had not shown himself qualified to testify as to the competency or incompetency of Delevan at the time of the accident." Discarding the part of the objection embodied in the phrase, incompetent, irrelevant and immaterial, as being too general to be considered, we. have only the objection that the witness had not shown himself qualified to· testify as· to the competency or incompetency of Delevan at the time of the accident. The question as to the qualification of the witness was one

primarily for the trial court to determine, and we believe it was correctly decided by it. If Delevan was incompetent a year prior to the time of the accident to discharge the duties of the same employment he was then engaged in, it was evidence tending to show that he was incompetent when the accident occurred, and also that the defendant by the exercise of ordinary care would have informed itself of his incompetency.

The eleventh assignment is: "The trial court erred in admitting in evidence, over the objection of defendant, the testimony of J. R. Sandlin as shown by defendant's bill of exceptions No. 14." The testimony referred to is as follows: "While Delevan was employed by defendant as foreman of car repairs at Douglas prior to June 27, 1903, I did know George Delevan as being an incompetent and reckless man as foreman over the department in which he was employed, and this was his general reputation in the shops among railroad men; he was generally discussed as being a drinking, reckless man." To this testimony the defendant objected upon the ground "that it was irrelevant, incompetent and inadmissible, as the witness said he had only been there nine days and was not qualified to testify as to the competency of Delevan or as to his reputation at Douglas prior to June 27, 1903." We think the court properly held that the witness was qualified to testify as to Delevan's incompetency and as to his general reputation. Sandlin was a car repairer, was at work in the defendant's yards on June 27, 1903, when the accident happened. That he had only been there nine days prior to that time, did not show that he could not, during that time, become informed of Delevan's competency to discharge his duties, as well as of his general reputation as an incompetent and reckless man.

The twelfth assignment complains of the court's admitting in evidence, over defendant's objections, the following testimony of the witness Whitsit: "In my judgment prior to the time plaintiff was injured, I did not consider Delevan a competent man to fill the position of rip track foreman in the Douglas yards." In addition to the propositions advanced under the seventh assignment of error, this one is asserted: "The witness stated no facts which showed he was a competent judge of the ability of Delevan to perform his duties as rip track foreman; and his own testimony shows he had not a sufficient opportunity to learn of Delevan's habits so as to ascertain whether or not he was a competent man for the position of foreman of the rip track or of car repairs." The propositions which are repeated under this assignment were disposed of in our consideration of the seventh assignment of error. As to the original one it seems to us that the witness's testimony shows that he was competent as an expert to form an opinion as to Delevan's ability to perform his duties as foreman, and that he had sufficient opportunity to learn of his habits and to ascertain whether he was competent to perform such duties. However, these were matters for the trial judge and the jury to determine rather than for this court to decide.

The thirteenth assignment of error is directed against the action of the court in admitting, over defendant's objection, testimony of

Fred Morris, shown by bill of exceptions No. 1, which is as follows: "That he knew the habits of George Delevan with reference to sobriety or drunkenness during his employment by defendant prior to April, 1903, and that Delevan was drunk a good deal of the time; that he had seen him drunk frequently prior to May 3, 1903, and had taken care of him when he was so drunk he could not perform his duties; that during the time he, witness, was employed, he had seen Delevan, at least twenty times, so drunk he could not perform his duties. That he was not employed as foreman of the car repairs until May 3, 1903, when the witness left Douglas, but prior to that time and while he was inspector, and also master car builder, I have seen him drunk at least twenty times." This shows that Delevan was an habitual drunkard while in defendant's employment up to the time he was made foreman of the rip track or car repairs, and, in connection with other testimony, was evidence tending to show that defendant knew, or by the exercise of ordinary care should have known of his drunkenness and incapacity, on that account, to discharge the duties of such employment when the defendant put him at it. The jury might well have found from such testimony that the defendant was negligent in employing a man of such habits in a position where the lives and limbs of its employes depended upon his faithful discharge of the duties of his employment.

This disposes of the six assignments we are charged in this motion with not considering and demonstrates that they were all considered and disposed of in our original opinion in passing upon the seventh assignment of error, which involved practically the same questions raised by them.

If one will take the trouble to read the certificate of the notary, commencing with the caption and continuing down to his signature, who took the deposition of the witness T. J. Morris, as it appears in the record, it will be found that the court did not err in overruling defendant's motion to suppress the deposition.

We believe that all the assignments of error insisted upon by appellant were properly overruled, and that his motion should not be sustained upon any ground presented. It is, therefore, overruled.

*Affirmed.*

Writ of error refused.