### HOUSTON, E. & W. T. RY. CO. v. EDDINGS.

(Court of Civil Appeals of Texas. Galveston. June 26, 1911. Rehearing Denied Oct. 5, 1911.)

1. MASTER AND SERVANT (§§ 101, 102*)—INJURIES TO SERVANT—DEFECTIVE PREMISES—RAILROAD PLATFORM.

An instruction that it was the duty of defendant railroad company to keep its platform in a safe condition for use of servants in the course of their employment, and that failure to use such degree of care and diligence as a man of ordinary prudence would use under the same or similar circumstances to keep the platform in safe condition was negligence, was objectionable; the railroad company being only required to use ordinary care to keep the platform in a reasonably safe condition.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 171, 172; Dec. Dig. §§ 101, 102.*]

2. APPEAL AND ERROR (§ 1066*) — INSTRUCTIONS—PREJUDICE.

Where a servant fell into a hole in the platform of defendant railroad's station, and injured his foot and leg, it appearing that the platform was not in a reasonably safe condition as a matter of law, and there being no issue raised as to the condition of the platform, that the court required the company to keep its platform in a safe condition, instead of requiring it to use ordinary care to keep it in a reasonably safe condition, was not prejudicial to defendant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4220; Dec. Dig. § 1066.*]

3. DAMAGES (§ 132*) — EXCESSIVENESS — PERSONAL INJURIES.

Plaintiff testified that his leg was badly bruised, and that he suffered much pain as a result of his injury, and was confined in bed 21 days, that his leg was permanently injured, and his earning capacity reduced at least one-third.

---

*Held*, that a verdict allowing plaintiff $1,000 was not excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385; Dec. Dig. § 132.*]

4. NEW TRIAL (§ 140*)—MISCONDUCT OF JURY —PROOF.

A charge of misconduct of two jurors was not ground for a new trial where it was not supported by any affidavit, and no sufficient excuse was shown for failure to obtain such proof.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 284–289; Dec. Dig. § 140.*]

Appeal from District Court, Angelina County; James I. Perkins, Judge.

Action by J. P. Eddings against the Houston, East & West Texas Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Jno. T. Garrison, for appellant. W. J. Townsend, Jr., and Sam R. Sayers, for appellee.

PLEASANTS, C. J. This suit was brought by appellee against appellant to recover damages for personal injuries alleged to have been caused by the negligence of the appellant. The amount claimed in the petition is $10,000. The appellant answered by general demurrer and general denial and a plea of contributory negligence. The trial in the court below resulted in a verdict and judgment in favor of appellee for the sum of $1,000.

The record discloses the following facts: At the time of his injury appellee was in the employment of appellant in the capacity of pump repairer. He was 68 years old, and had been in the employment of appellant for 20 years or more. He lived at the town of Lufkin, in Angelina county, but in the discharge of his duties as pump repairer he was required, whenever called upon, to go out on appellant's road, and repair pumps along the line of the road from Houston to Shreveport. He kept the tools furnished him by appellant with which to do his repair work in a tool closet on appellant's depot platform at Lufkin. The place at which appellee received his injuries is described, and the circumstances under which he was injured are stated by him, as follows: "The depot there is a one-story frame building. The depot is 30 or 35 feet wide, and the depot part is about 50 or 60 feet long. Then there is a shed about 40 feet long on the end of the depot, and the tool chest was under the shed. This shed and platform is attached to, and forms a part of, the depot. It is under the same roof and same floor. This platform is not on a level with the ground, but is between four and five feet high, where the tool chest is located. There is only one pair of steps leading up on the platform on the outside of the depot, and these steps are right close to the baggage room door. The steps start at the ground, and are built up to the top of the platform. The platform where the steps are is about 4 feet from the ground.

The steps lead from the ground to the platform next to the depot wall. In going to the closet where the tools were, a man would have to go up the steps and along the platform until he passed the warehouse part of the depot. The platform is partly on the side of the depot, too; that is, about five or six feet of the platform runs along beside the warehouse. These steps lead up on the platform on the side. This side platform connects with the platform on the rear of the depot. The tool chest was located on the far edge of the platform from the steps, and you have to go up the steps and along the side of the warehouse, and around the edge of the warehouse to the closet on the far edge. I have been using that closet or tool chest for a little over a year. On December 2, 1906, I received a message from appellant to go out on the night train to New Caney and repair a pump. I left home between 2 and 3 o'clock in the morning. I left my house that morning, and went to the depot, and went up the steps on the platform to go to the closet to get my tools. I came up the steps and came around the depot, like I had to go to get my tools, unlocked the door, got out my tools, put them on my shoulder, locked the closet door, and turned around, and started back to the office where I could catch the train. As I turned from the tool chest, the second step I made from the closet I stepped in a hole. The hole was in the platform. The hole, I think, was about 15 or 18 inches long, and looked to be about 6 inches wide. I stepped into that hole, and it threw me down. My left leg caught right under the knee on the edge of the broke place in the hole. In slipping, the hole bruised my leg up, but I finally got my leg out of the hole, got up, and put my tools down, and ascertained that I could not do the work, replaced the tools in the closet or tool chest, and went to the infirmary at Houston."

This testimony is in the main uncontradicted. The existence of the hole in the platform and the fact that appellee stepped into it at the time and under the circumstances stated by him is undisputed. There is little variance in the statement of the witnesses as to the size of the hole. None of them put it at less than 4 inches in width and 12 inches in length. There were two electric lights provided for the depot, and they were generally turned on. One of the lights was on the back part of the platform in the vicinity of the hole, and the other was between the office room and the car track. No witness testified positively whether or not the lights were on at the time of the accident, nor to what extent the light on the rear of the platform, if turned on at the time, lighted that portion of the platform immediately around the hole in which appellee placed his foot. The hole was made by a heavy

piece of machinery which was thrown on the platform and broke through the flooring. This occurred either on the 1st or 2d day of December. The accident to appellee occurred, as before shown, on the morning of December 3d.

[1] Upon this state of the evidence the trial court gave the following charge: "It is the duty of a railroad company to keep its depot platforms in a safe condition for the use of its' servants employed thereabouts in using said platforms in the course of their employment, and the failure of such railroad company to use such degree of care and diligence as a man of ordinary prudence would use under the same or similar circumstances to keep such platform in safe condition for the use of such employés is negligence on its part."

The first assignment of error complains of this charge on the ground that it puts a more onerous duty upon appellant than the law imposes in stating that it was appellant's duty to exercise ordinary care to keep its platform in a safe condition, when the law only requires of appellant that it use ordinary care to keep its platform in a reasonably safe condition. The charge is inaccurate in the statement of appellant's duty in the respect mentioned, and, if the question of whether the platform was reasonably safe was raised by the evidence, this error in the charge would require a reversal of the judgment. Bering Mfg. Co. v. Peterson, 28 Tex. Civ. App. 194, 67 S. W. 133; Railway Co. v. Wise, 106 S. W. 465; Railway Co. v. Smith, 50 Tex. Civ. App. 10, 108 S. W. 988; Faulkner v. Railway Co., 113 S. W. 765; Railway Co. v. Snow, 115 S. W. 631.

[2] We do not think, however, that reasonable minds can differ in the conclusion that the platform in question was not in a reasonably safe condition at the time appellee was injured thereon. The hole in the platform, according to all of the testimony, was of such size that, if any one stepped into it, his foot and leg would pass through, and he would likely receive serious injury. A platform intended for the use of the public and appellant's employés, and which was known to be so used both day and night, could not be said to be in a reasonably safe condition with a hole of this kind in that portion of it over which the employés in the discharge of their duty would likely walk. There being no issue raised by the evidence as to the condition of the platform, the error in the charge could not have injured appellant. In the charge quoted and in other portions of the charge the issue of whether appellant was negligent in permitting the hole to be and remain in the platform was properly submitted to the jury, and appellant does not contend otherwise. For the reasons indicated, the assignment is overruled.

[3] The next assignment complains of the verdict on the ground that it is excessive in amount. We cannot agree with appellant in this contention. Appellee testified that his leg was badly bruised, and that he suffered much pain as the result of his injury and was confined in bed for 21 days, that his leg is permanently injured, and that as a result thereof his earning capacity has been reduced at least one-third.

[4] Dr. Treadwell testified: "His leg was in a condition it couldn't be straightened without force, and the tendons seemed to be contracted. * * * That tendon was contracted or drawn, seemed to be so much so that it was impossible to straighten his leg without force." This was more than two years after the injury this examination was made. Dr. J. H. Chapman testified to the same effect. This testimony amply justifies the amount of the verdict.

There is no merit in the remaining assignment of error, which complains of the refusal of the trial court to grant a new trial on the ground of the misconduct of the jury. The allegations of misconduct on the part of two of the members of the jury are not supported by any affidavit, and no sufficient excuse is shown for the failure to procure such proof. Upon the showing made we think the trial court properly refused to grant the motion for new trial on this ground.

This disposes of all the assignments presented in appellant's brief.

There is nothing presented which requires or would authorize a reversal of the judgment, and it is therefore affirmed.

Affirmed.