TEXAS & N. O. R. CO. v. GLASS et al.
(No. 7476.)

(Court of Civil Appeals of Texas. Galveston. Feb. 21, 1918. Rehearing Denied Feb. 14, 1918.)

1. MASTER AND SERVANT ☞168(1)—DUTY TO FURNISH SKILLED COSERVANTS.

It is the duty of a railroad to furnish an engineer of at least ordinary skill to operate a crane on a wrecker, and it is liable for damages for injury caused by an act of an inexperienced one where an engineer of ordinary skill and experience would have foreseen the result of such act or manner of operating the crane.

2. NEW TRIAL ☞6—GROUNDS—FALSE TESTIMONY.

It was not an abuse of discretion to deny a new trial for newly discovered evidence on an affidavit that after trial a witness admitted that he lied on the stand, where the witness denied the statement under oath, and where the affiant was a contradictory witness and the admissions were made, if at all, in a barroom imbroglio between the two contradicting witnesses.

3. DEATH ☞81—DAMAGES—ELEMENTS—CARE AND COUNSEL.

In an action for death of father and husband, damages may be allowed for loss of services about the house out of work hours, and for care and counsel.

4. DEATH ☞99(4) — DAMAGES — EXCESSIVENESS.

Where wife was allowed $10,000 damages for death of husband 62 years of age earning $60 per month, the further allowance of $5,000 each to two daughters 17 and 22 years of age was excessive, and will be reduced to $2,500 each.

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Suit by Mrs. Sallie Glass and others against the Texas & New Orleans Railroad Company. Judgment for plaintiffs, and defendant appeals. Reversed, unless remittiturs be filed.

Baker, Botts, Parker & Garwood and McMeans, Garrison & Pollard, all of Houston, for appellant. Presley K. Ewing, of Houston, and Ewing Werlein, of New Orleans, La., for appellees.

GRAVES, J. By this appeal the Texas & New Orleans Railroad Company seeks revision of a judgment against it below for $20,-000 in favor of Mrs. Sallie Glass and her two daughters, apportioned $10,000 to Mrs. Glass, and $5,000 each to the daughters.

These amounts were so awarded them by a jury as actual damages for the death of their husband and father, A. M. Glass, Sr.; he, while in the course of his employment as foreman of a wrecking crew for appellant, had been hit on the head and killed by a truss rod, pulled from underneath a car the company was wrecking or dismantling in its yards at Houston.

On this occasion the truss rod was pulled with a wrecker, that is, a stationary steam engine placed upon a steel flat car, equipped with a movable crane or boom about 25 feet long, and a steel cable thereon of the same length; the crane being operated by the power of the engine; this wrecker was stationed on an adjoining track in such position that the truss rods in the car they were dismantling could be reached with the crane, and in this instance was operated by appellant's engineer, Coghlan, and his assistant, Lamb.

In their petition the appellees alleged that this engineer had exclusive control, direction, and management of the engine, and of the power and energy thereof, and that he was guilty of negligence in causing one of the truss rods to be pulled and swung out with unnecessary force and violence, and in an improper manner and direction, suddenly and unawares to A. M. Glass, Sr., whereby it struck and killed him.

In response to special issues submitted to them, the jury, among other facts, found: (1) That appellant's engineer, Coghlan, in charge of the engine at the time, caused the truss rod in question to be pulled and swung out with unnecessary force, or in an improper manner or direction; (2) that such act on the part of the engineer was negligence as defined in the charge towards deceased; (3) that such negligence was the proximate cause of the injury and death of A. M. Glass, Sr.; (4) that Glass was neither guilty of contributory negligence in anything he did, or failed to do, nor would he in the exercise of ordinary care have known in time to have avoided injury that the engineer would cause the truss rod to be pulled and swung out in the manner he did.

As these findings indicate, two directly opposing theories of the case had been threshed out by the litigants before the jury, the full benefit of which had been given to each in the issues submitted by the court, so that, since the jury in the findings quoted so found, we must assume that appellant, through its engineer, Coghlan, was guilty of negligence in the respects charged by appellees, that is, that he caused the truss rod to be pulled out with unnecessary force, and sidewise, instead of straight up, as would have been the proper manner.

In contest of the theory of appellees thus upheld by the jury, the railroad company had contended that Glass was foreman over

the entire force of men engaged in the process of dismantling the car from which the truss rod was pulled, including the engineer, Coghlan, and his assistant, Lamb, and as such had himself directed the manner of pulling the rod and given the signals to Coghlan, not only when and how to pull, but in what direction. But, as stated, the jury found otherwise, and that largely, if not wholly, upon the testimony of Coghlan's assistant, Lamb, that the engineer had exclusive control and management of the wrecker, and of the manner of applying the power therefrom to the truss rod; that he (Lamb) was there for that purpose and gave the signals to Coghlan when to pull on the rod, and when so signaled Coghlan had jerked the rod out sidewise, too suddenly and with too much force, and killed Glass; that Glass had nothing to do with that part of the work, nor any control over Lamb and Coghlan in doing it, but was only in immediate charge of a crew of six negroes, some of whom merely fastened the crane to the truss rod with a chain preparatory to the pulling. There was also other testimony to the effect that it was improper to pull a truss rod sidewise in the manner here shown, but that it should have been pulled straight up by the use of the cable only, and without moving the crane to one side.

While no attempt has been made to state in full detail the facts of the case, what has been and will be hereafter given furnishes an adequate basis, we think, for determining the questions presented by this appeal, which are only three in number: (1) It is claimed that appellees wholly failed to show any actionable negligence on the part of the railroad company; (2) that the trial court should have granted a new trial on account of alleged newly discovered evidence subsequent to the entry of judgment; (3) that the verdict is excessive in amount. These will be disposed of in the order given.

[1] Upon the first question we are unable to accept appellant's view as to what would not constitute actionable negligence under the conceded facts here; succinctly stated it is this: That the engineer, Coghlan, being shown to be wholly inexperienced in pulling truss rods from underneath a car by means of a crane, never having seen it done or done it himself before, did just what any other inexperienced man would have done under the same circumstances, namely, pulled the rod out sidewise, or with an outward swing of the crane, instead of straight up by leaving the crane stationary and using the cable only; and though in so doing he also jerked the rod out too suddenly and with more power than was necessary or proper, he was not negligent in these acts, nor could negligence be imputed to appellant on account of them, because he could not reasonably have contemplated or anticipated that the injury to Mr. Glass would result. In support of the principle invoked, the following authorities are cited: Sjogren v. Hall, 53 Mich. 274, 18 N. W. 812; Railway v. Story, 26 Tex. Civ. App. 23, 62 S. W. 132; Railway v. Kieff, 94 Tex. 338, 60 S. W. 543; Railway v. Cocke, 64 Tex. 157; Railway v. Barry, 98 Tex. 251, 83 S. W. 5; Railway v. Reiden, 48 Tex. Civ. App. 401, 107 S. W. 666; Railway v. Bigham, 90 Tex. 226, 38 S. W. 162; citing Milwaukee v. Kellogg, 94 U. S. 469, 24 L. Ed. 256; Smith v. Railway, L. R. 6 C. P. 14; Railway v. Mussette, 86 Tex. 708, 26 S. W. 1075, 24 L. R. A. 642; Motey v. Marble, 74 Fed. 157, 20 C. C. A. 366; Railway v. Elliott, 55 Fed. 949, 5 C. C. A. 347, 20 L. R. A. 582.

As we understand them, the general and well-settled doctrine elaborated in these cases is that an act causing injury is not negligence, unless under all the circumstances of the particular case it might reasonably have been anticipated that the injury would have resulted as a probable consequence; but we do not think under that principle a railroad company could escape liability for a concededly negligent act resulting from its having put in charge of the work an employé so lacking in experience and skill as to be unable to reasonably anticipate injury, when one having ordinary skill and care would have done so; the law places no such premium upon a master's carelessness and indifference to the safety of its employés; upon the contrary, it was the railroad company's obvious duty here to place in charge of the engine upon that wrecker an employé possessed of and capable of exercising at least ordinary care and skill for that particular work.

If it had done so, the evidence is undisputed that no injury to Mr. Glass would have occurred, because the uncontroverted proof is abundant, being the testimony of two experienced men in that line of work, that a person of ordinary skill and care in doing the work at which Coghlan was engaged, would necessarily, from his act in sending the truss rod with the force and in the direction he did, have not only foreseen from the attendant circumstances that the truss rod would strike and injure Glass, but would have known that it must inevitably do so in direct and immediate consequence. Indeed, such must by inference be the logical effect of appellant's position, since it seeks to excuse Coghlan from the duty of anticipating the injury solely because he was without such care and skill, thereby impliedly conceding that he could and should have known the injury would follow such acts, had he been a man of ordinary experience in that kind of work.

If, then, it was the bounden duty of appellant to put in charge of the engine a servant having ordinary care and skill for that kind of work, as has been above stated, it seems to us that no difference remains between the view we have expressed and the position of appellant; that such was its plain duty is well settled. Railway Co. v. Hays, 40 Tex.

Civ. App. 162, 89 S. W. 29; Railway Co. v. Smith, 50 Tex. Civ. App. 10, 108 S. W. 988.

[2] In the second place, it is urged that the trial court abused its discretion in refusing a new trial on account of affidavits made by the engineer Coghlan, and another, to the effect that appellees' witness L. Lamb had subsequent to the trial admitted to Coghlan that he had told some lies in his testimony upon the trial; these affidavits were attached to appellant's motion for new trial, and the court considered them, together with counter affidavits of Lamb himself and two others, filed by appellees in reply to the motion; Coghlan in his affidavit verified the statement of one Cartwright that Lamb made this admission one night in a saloon in Houston when asked as to why he had told all those lies upon the Glass trial; in his answering affidavit, Lamb pointedly denied ever making any such statement, but said that if he ever had, he was drunk at the time and did not know what he was saying, and vigorously reiterated that what he had sworn to on the trial was the truth; in others of the answering affidavits mentioned, it was stated that, while an honest and industrious man, Lamb was unfortunate enough to occasionally become so drunk as not to know what he was doing for days at a time, and was found in this condition about the time, or very shortly after the date, of the alleged admission to Coghlan, and taken home; and, further, that Coghlan had confessed to a Houston attorney, not shown to have had any connection with the case, that he had spent either $20 or $60 on a witness in the Glass case to produce intoxication and secure from him statements contradictory of his testimony upon the trial.

If the testimony thus offered may be classed as newly discovered evidence, rather than as matter merely tending to discredit that previously given during the trial, we think it falls far short of indicating with any degree of promise that its admission upon another trial would have brought about a different result, and that the court below would have been fully justified in so concluding. Under such conditions, refusal of a new trial would not constitute an abuse of discretion. Scranton v. Tilley, 16 Tex. 183; Houston & T. C. Ry. Co. v. Forsyth, 49 Tex. 171; Houston City St. Ry. Co. v. Sciocca, 80 Tex. 356, 16 S. W. 31; Fitzgerald v. Compton, 28 Tex. Civ. App. 202, 67 S. W. 131; S. A. & A. P. Ry. Co. v. Moore, 31 Tex. Civ. App. 371, 72 S. W. 226; Crigler v. Newman (Ky.) 91 S. W. 706.

At most and best, these affidavits but reflected a subsequent barroom imbroglio between the same two witnesses who had so directly contradicted each other when testifying upon the trial over whether or not any such admission as was charged by the one and denied by the other had been made; in such circumstances the trial court was warranted in finding, either that Lamb did not make the statement attributed to him, or, if he did, that it was made in unknowing drunk-enness and was not probably true; that court having resolved a conflict over an issue of fact one way, its action will not be revised on appeal, unless clearly an abuse of discretion, which we do not think it was. Railway Co. v. Marcelles, 59 Tex. 337.

[3, 4] The judgment is last assailed as being excessive. As to the award of $5,000 each to the two daughters of Mrs. Glass, after some hesitation, we have concluded that it is. Their father was 62 years old when killed; his expectancy being accordingly quite limited; and he had been for some years only earning about $60 per month, with no expectation, so far as the evidence shows, of any increase, rather the contrary according to the usual course of advancing age; one of the daughters was then 17, the other 22; their ages at the time of the trial being respectively 20 and 25; the former remained single, while the latter married shortly after her father's death, but only lived with her husband about four months, was divorced, and returned to again become a member of her mother's family; up to the time of the trial the younger daughter had been entirely dependent upon the family; the older one had also been so until her marriage, but seems to have been working, and at least partly supporting herself, subsequent to returning home after separation from her husband.

It is quite plain, we think, that in all human probability Mr. Glass, with his advanced age and small earning capacity, would never have lived long enough to earn anything like $10,000 for his wife and $5,000 each for his two daughters; hence the excess in these allowances must find justification if at all, in the pecuniary value to them of his services about the house, and his care and counsel; while this latter is a recoverable element of damages, and the jury had, under the facts of this case, a rather broad field for the exercise of their discretion in appraising it, still pecuniary benefit was the sole basis on which it could be estimated and allowed, and, under the evidence here, we think the award to the daughters manifests, to some extent at least, the influence of sympathy or prejudice rather than the idea of compensation only, and must be accordingly reduced.

The substance of the testimony concerning Mr. Glass' services, counsel, and protection to his family is thus stated by his wife:

"Mr. Glass was accustomed to spend his time at home out of work hours, and, when he would come home, he always helped me to do services about the home. He was a good man in affording protection and advice to me and the girls; he was a good man in all respects. He was accustomed to give advice to me and my daughters; he was our protection in the home."

This is all. How much work he performed around the house, and its value, what advice he gave, and how much it was needed by his good wife, then 52 years old, and his daughters, then aged 17 and 22 years, respectively, what protection was needed and

afforded, and from what or whom, the record does not disclose.

If the larger part of the evident excess in amount over what he would reasonably have earned during the remainder of a natural life be considered as more properly accruing to his wife because of the more direct value to her of his services about the home, and the $10,000 awarded her be allowed to stand, there is the more reason for concluding that a larger sum than just compensation was given the daughters.

From the conclusions reached, it follows that all of appellant's assignments must be overruled, except the fourth and fifth, raising the issue of excessiveness in the awards to Annie J. and Allie May Glass, but that these two must be sustained, and the judgment reversed and remanded, unless these two last-named appellees each file in this court remittiturs of $2,500 within 15 days from this date; if such remittiturs are filed, the judgment will then be affirmed.

Reversed and remanded, unless remittiturs are filed.