### JAMES J. TITUS v. STATE.

1. When a statute, in defining a crime, refers by name to another well--known crime, and makes such named crime a constituent of the defined crime, in an indictment for the latter, it is not sufficient to use the mere statutory language, but the particulars constituting the named crime must be shown.

2. In an indictment for murder, when the fact that the killing was in the commission of a rape is relied on to make such killing murder in the first degree, a count in the general form authorized by the forty-fifth section of the Criminal Procedure act is sufficient.

3. A verdict in a capital case will not be set aside unless the irregularities committed by the jury be of a nature to raise a suspicion that they may have prejudiced the prisoner.

On rule to show cause why a new trial should not be granted. On case certified from the Warren Oyer and Terminer.

Argued at June Term, 1886, before BEASLEY, CHIEF JUSTICE and Justices DEPUE, VAN SYCKEL and KNAPP.

For the defendant, *J. G. Shipman & Son.*

For the state, *Sylvester G. Smith* and *Henry S. Harris.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This case is before us on a rule to show cause why the verdict should not be set aside, and a new trial granted. The inquiry thus authorized, however, does not extend so far as to embrace the question whether the evidence was sufficient to sustain a conviction, for the case could not properly be opened to that extent, as the proofs of the defendant's guilt were of the most convincing character. The rule as granted, and which has been referred to this court for its advisory opinion, confines the investigation to three subjects which will be disposed of *seriatim.*

The first of the questions thus propounded is whether the second count of the indictment in this case is good or bad.

The count thus challenged is in the words following, viz.: " And the grand inquest aforesaid, upon their oaths aforesaid do further present that the said James J. Titus, on the said eighth day of April, in the year aforesaid, at the said town of Hackettstown aforesaid, in said county, and within the jurisdiction aforesaid, in and upon one Matilda Smith, in the peace of God and this state then and there being, did commit rape, and in attempting to commit rape, and in committing rape in and upon her, the said Matilda Smith, did kill the said Matilda Smith, contrary to the form of the statute in such case made and provided, against the peace of this state, the government and dignity of the same."

It is obvious that this count has been fashioned upon the theory that if the state relies upon the circumstance that the alleged killing took place in the commission of a rape, the indictment must specifically exhibit such circumstance.

If this theory be correct, it follows that no judgment can be founded upon the present verdict, for the count is, in our opinion, radically defective. The mistake of the pleader in this instance is the common one of substituting an inference of his own from a set of facts in the place of showing the existence of such facts; he alleges that the defendant " did commit a rape," but does not lay a single fact from which the court can see that such conclusion is well founded. No reason is perceived why, if it be necessary to show a rape, as one of the constituents of the offence of murder in the first degree, such crime should not be pleaded with the same formality as is requisite when it forms the sole basis of a count in an indictment.

The only attempted justification of this departure from the usual methods of criminal procedure is that the pleader, in describing the crime, has followed the language of the statute, but even if it were to be admitted that the act referred to contains a description of the offence charged upon this defendant, nevertheless the count would necessarily be declared to be defective and insufficient, for it manifestly belongs to that class of cases that stand aside of the general rule that in the indict-

ment the crime may be described in the terms of the statute creating it. For in the section now in question, murder in the first degree is defined, in part, by a reference to the crime of rape, without setting forth the constituents of such crime, and consequently, upon well-known principles, such definition, if imported without explanatory amplification into the indictment, will not suffice. Mr. Bishop, in his treatise on Criminal Procedure, states the doctrine in these words, viz.: "And generally, where a statute merely designates an offence by the use of one word, technical or otherwise, yet does not describe the constituents of the offence, the indictment must state it according to its legal, and sometimes its actual particulars." 1 *Bish. Crim. Pro.*, § 373.

The count in question is fundamentally defective, and must be regarded as a nullity for all the purposes of this prosecution.

The second question is thus presented in the state of the case, viz.: "Conceding that the second count is bad, whether the evidence of a rape, or attempt to commit rape, can be used under the two other counts in order to constitute murder in the first degree." The first of the two counts here referred to is drawn in conformity to the requirement of the forty-fifth section of the Criminal Procedure act, and charges, in general form, that the defendant, "in and upon one Matilda Smith, in the peace, &c., did make an assault, and her, the said Matilda Smith, then and there, feloniously, willfully and of his malice aforethought, did kill and murder, contrary," &c.

The second of the counts mentioned is framed in common law form, charging that the defendant murdered his victim, strangling her with his hands.

At the trial the jury was instructed that if it appeared that the killing was perpetrated by the defendant in committing, or in attempting to commit, a rape upon the woman, he should be found guilty of murder in the first degree, without reference to the question whether such killing was willful or unintentional.

The position of the counsel of the defendant upon the point

is that as there is no special count charging that the death of the woman occurred in the attempt to commit or in the commission of a rape upon her, the law will not permit such fact to be proved for the purpose of aggravating the killing, if it was unintentional, into the crime of murder in the first degree. This contention is based on the sixty-eighth section of the Crimes act, which declares that " all murder that shall be perpetrated by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in perpetrating or attempting to perpetrate any arson, rape, &c., shall be deemed murder in the first degree, and that all other kinds of murder shall be murder in the second degree." *Rev.*, *p.* 239, § 68.

The argument urged in support of the position that a special count was indispensable whenever the state relied on any of the statutory particulars connected with the killing to intensify such killing into murder, was that as the act created and defined the offence, every constituent of the crime embraced in such definition must be stated in the indictment. But this proposition cannot be sustained, for it has been conclusively settled by the Court of Errors in this state, in the case of *Graves* v. *State*, 16 *Vroom* 205, 358, that the section relied on did not create any new crime, but " merely made a distinction, with a view to a difference in the punishment, between the most heinous and the less aggravated grades of the crime of murder." This decided case seems to us directly in point, for in that instance, the indictment being in the abbreviated form given by the statute, it was, insisted that as such form did not embody the statement that the alleged killing was " willful, deliberate and premeditated," the pleading was insufficient, as it did not appear that murder, within the statutory definition of the crime, had been committed. The objection was overruled and the indictment was sustained, and it is obvious that if it be not necessary to set out in the count that the alleged killing was " willful, deliberate and premeditated," which is one of the categories of murder mentioned in the section, it cannot be necessary to show that the killing was in the com-

mission of a rape, which is another of the categories of the same section. We thmk the adjudged case plainly rules the present one with respect to this subject.

The third and last objection raised by the defence relates to the alleged misconduct of some of the jurors after they had been put in charge of an officer, and had retired to their room to consider of their verdict.

Affidavits have been taken in this respect, and from them it appears that certain of the jurors sent the constable in attendance to a jeweler's and procured a magnifying glass, and with it compared certain wood fibres that were adhering to the clothes of the murdered girl with those of a wooden platform that had been exhibited at the trial, and upon which the state contended the murdered woman had been thrown down when she was violated. These clothes and this platform had been sent to the jury-room by the court when the jury retired. There can be no question that this conduct of these jurors was irregular, but after admitting this, the question remains whether the verdict should be set aside on this account. The rule is well settled in this state that any misconduct of the jury, to have the effect of invalidating their proceedings, must be of such a character as to raise a belief, or at least a suspicion, that the misbehaviour complained of has in some measure prejudiced the case of the defendant. This principle of practice was much considered and its limitations plainly defined in the case of *State* v. *Cucuel*, 2 *Vroom* 249, which was also an indictment for a capital offence, and although the lapses from the line of duty of some of the jurors were of a very marked character indeed, the court refused to annul the verdict, because there was no reason to think that the verdict had in the least degree been affected by such irregularities. After a careful examination of the subject, the general doctrine then announced was this : that a verdict will not be vacated, even in a capital case, on account of the misconduct or irregularity of a jury, " unless it be such as might affect their impartiality or disqualify them from the proper exercise of their functions." This being the established rule,

the only question which supervenes is whether in the testimony taken anything has been shown that is calculated in any measure to excite a suspicion that the use of the magnifying glass, after its surreptitious introduction into the jury-room, has affected the verdict to the prejudice of the prisoner.'

After considering this matter with due care, we are clearly of opinion that there is not the slightest ground for such an inference, for the case, of necessity, stood before the jury after their instrumental scrutiny precisely as it did before such experiment. Certain of the jurors were examined on the rule to take affidavits, and there is no room for even a pretence that the jurors, by means of the instrument in question, either made or thought that they made, any discovery with respect to the case. All that they did, or could do, by the employment of the lens was to find that the fibres in the dress corresponded in all respects with those of the platform, and that perfect correspondence had been proved by an able and accomplished expert, who was a witness at the trial and had made a microscopic examination of them. The entire identity of appearance of these woody filaments was an undisputed fact in the case, and the jury therefore knew such fact as well before making their test as they did afterwards. The truth is that it is plain that the use of this glass was a measure tending rather to favor than to injure the prisoner, for the proofs of the state on this point needed no ocular verification, while on the other hand, if the jury had thought that they discovered a dissimilitude between the two classes of fibres, the case made against the defendant would have been, to some extent, impaired.

If there had been conflicting testimony touching the matter thus looked into by the jury, the present motion would have assumed a very different aspect, but as these facts stand, we are entirely satisfied that the irregularities in question did not, in the faintest degree, prejudice the defendant, nor did they even tend to do so.

These remarks should not be closed without adverting to the fact that some of the jurors were called as witnesses, under

the rule in this case, to prove their own official misconduct or that of their fellows. Such course was conspicuously illegal. The court could not have based its action on such testimony, for it has been the long-established rule that jurors cannot be called to the stand for such a purpose.

Let the Oyer and Terminer be informed that in the opinion of this court the rule to show cause should be discharged.