## Wehner & White v. Dagmar Lagerfelt.

### Decided December 11, 1901.

**1.—Expert Evidence—Witness Not Qualified.**

A physician of 35 years practice who, being called as a witness, stated that he had read the best authorities on the subject, and knew that they said as to the permanent injury or bad results of an electrical shock to the human system, but that he had no personal experience, and was not an expert, and did not feel qualified to give an opinion, did not show himself qualified to testify as an expert as to the results of an electrical shock received by plaintiff.

**2.—Electricity—Negligence—Injury to Person on Sidewalk.**

Where defendants, operating an electric light plant, permitted a broken uninsulated wire attached to one of their poles to be and remain near the street, and so connected with the main wire supported by the pole as to become charged with an electric current dangerous to a person passing along the street, they were liable for injury to one who came in contact therewith, regardless of whether they owned the broken uninsulated wire.

**3.—Same—Proximate Cause.**

Where defendants negligently permitted an uninsulated wire to hang from their poles to within a foot or two of the street, and negligently permitted the wire above it, charged with electricity, to become abraded as to its insulation, and negligently suffered these two wires to become and remain connected by a smaller wire which conveyed the eletric current to the hanging wire, such negligence was the proximate cause of the injury to one who, while on the street, was hurt by coming in contact with the hanging wire which did not belong to defendants, since each of the negligent acts concurred in causing the injury.

Appeal from El Paso. Tried below before Hon. J. M. Goggin.

*Millard Patterson* and *C. N. Buekler,* for appellants.

*Beall & Kemp,* for appellee.

NEILL, Associate Justice.—This appeal is from a judgment against appellants in favor of appellee for $1000 damages occasioned by the negligence of appellants in permitting a wire charged with electricity to hang down from the poles of an electric light company which they were operating near a public street. The conclusions of fact and law fully show the nature of the case.

On or about the first day of July, 1900, appellants, Wehner & White, a partnership composed of Peter Wehner and Z. T. White, were in possession of and operating under a lease all the property of the El Paso Gas, Electric Light and Power Company, a corporation organized for the purpose of generating and selling electricity to the city of El Paso

and its inhabitants, including its entire plant, posts, wires, appliances, etc., and under their lease from the company had exclusive control and management of the machinery, works, poles, wires, and appliances of said company. On that day and long prior thereto the appellants, as such lessees, maintained and operated along the streets of said city a large number of poles, electric wires, and lamps for the purpose of furnishing electricity to the city and its inhabitants. One of the electric wires, so maintained and operated by appellants, was suspended from poles along the north side of San Antonio street, one of the principal thoroughfares of said city, and charged with a strong and dangerous current of electricity. Below and near this wire was suspended from the same poles one that was uninsulated, the end of which was broken and hanging within a foot or two of and above the sidewalk on the north side of said street. The insulation of the upper wire through which the strong electric current was conveyed was worn and abraded. In contact with one of its abrasions was a small bale wire which extended therefrom and rested upon the uninsulated and broken wire beneath, thereby conveying to and charging it with a strong and dangerous current of electricity from the defectively insulated wire above, thus rendering the uninsulated hanging wire very dangerous to persons passing along said street and sidewalk. This dangerous condition of the wire existed on the day above stated, and had been maintained continuously for about two weeks prior to and up to that time, and, by the exercise of ordinary care, could and should have been known by the appellants.

On the evening of the day stated the appellee, Dagmar Lagerfelt, a little 10-year-old girl, with a younger brother, while walking along said sidewalk in ignorance of the danger, came in contact with the uninsulated hanging wire, charged with a strong and dangerous current of electricity in the manner and by the means aforesaid, and thereby received serious and painful wounds and burns, from which she suffered exceeding physical and mental pain and anguish, and from which she still suffers.

It was negligence in appellants to maintain said wire charged with electricity so near a public street as to endanger persons in the exercise of their rightful use of it, and such negligence was the proximate cause of appellee's injuries.

*Conclusions of Law.*—1. The appellants offered to prove by A. L. Justice, a physician of thirty-five years practice, that a shock to the human system from electricity, such as had been received by appellee, would leave no permanent injury or bad results, and that there would be no tissue change on account of such shock. The appellee's counsel objected to the introduction of such testimony on the ground that it had not been shown that the witness was competent to testify as an expert as to such facts. The witness being then interrogated by appellant's counsel, said that he had read the best authorities on the subject, and knew what the authorities said and claimed to be the result of electric-

ity upon the human system. But at the same time he said he was not an expert, and, to be very frank, did not feel qualified to give an opinion. That he did not know what would be the probable result of a shock from electricity, such as is complained of in this case, from actual experience, because he had no experience in treating such cases. But from reading the best authorities on the subject he knew what they said about the matter. Whereupon the court held that the witness had not shown himself to be sufficiently expert in the matter, and sustained the objection and refused to permit him to testify as to such matters.

The definition of the word expert is: "An expert or experienced person; one instructed by experience; one who has skill, experience or extensive knowledge in his calling, or in any special branch of learning." Web. Int. Dict. An expert, as the word imports, is one having had experience. Lawson on Exp. and Op. Ev., 2 ed., 230. Rule 36, which follows the definition by the same author, is thus stated: "Therefore, to render the opinion of a witness admissible on the ground that it is the opinion of an expert, the witness must have special skill in the subject concerning which his opinion is sought to be given." Then, quoting from Carr v. Northern Liberties, 35 Pennsylvania State, 324, he says: "Matter of opinion is entitled to no weight with a court or jury unless it comes from persons who first give satisfactory evidence that they are possessed of such experience, skill or science in such matters as entitled their opinions to pass for scientific truth."

Of all others, the witness was best qualified to know whether he was an expert on the subject concerning which his opinion was sought to be given. To his credit, learning, and candor be it said, he knew himself well enough to know that he was not an expert, and did not feel qualified to give an opinion on the subject of inquiry. Frankly expressing to the court this knowledge and opinion of himself, it became apparent that if he gave any opinion it could not be such as would be "entitled to pass for a scientific truth." When a witness states he knows nothing about the subject of inquiry, and that he is not qualified to give an opinion, he should not be permitted to express any; for in order to say something concerning a matter, the witness should know something. Wheeler v. Baldwin, 22 N. H., 167, and 24 N. H., 168. In the case before us the witness had no experience, and did not consider himself either an expert or qualified to give an opinion. He only knew what the books said upon the subject. It was not sought to be shown that he had fomed an opinion from the books, or, if he had, what such opinion was. While an expert may testify to an opinion of his own derived from books, for one to do so, he must be an *expert,* and have an opinion of *his own* upon the subject of inquiry. Books of science and art are not admissible in evidence to prove the opinions contained therein. Lawson on Exp. Ev., 202. If they are not, how can one who knows their contents, but has formed no opinion of his own upon the subject under consideration, be allowed to testify to what the books say? The books themselves would be the best evidence, and they are no evidence at all.

The witness testified to everything he knew about the effect of the electric shock upon the child, and the court did not err in refusing to permit appellants to prove anything more by him.

2. It is a matter of no consequence who was in fact the owner of the uninsulated broken wire which hung from appellant's poles over the street and shocked and injured the appellee with its electric current. Macon v. Street Railway, 62 S. W. Rep., 498. The negligence of appellants consisted in allowing the wire to remain in a condition dangerous to persons using the street. Therefore the court did not err in refusing to allow appellants to prove that the wire did not belong to them, but was owned by some one else, if the property of anyone. It was on the poles maintained by them, and in position and condition to receive a dangerous current of electricity from a wire they did own, and to injure persons passing along the street. This condition and position they knew, or by the exercise of ordinary care could have known and have reasonably anticipated the danger to the public.

The business of supplying the public with electricity, for lighting or other purposes, involves the handling of a highly dangerous agent, and therefore requires a corresponding degree of care on the part of one who undertakes it, to prevent injury to persons passing along streets where his wires are strung. And one who lets the use of a structure, e. g., a telephone pole, for electric wires thereto, is liable for defects in the structure by which electricity is caused to escape from the lessee's wires, injuring third persons. W. U. Telegraph Co. v. Thorn, 12 C. C. A., 104, 64 Fed. Rep., 287. In the case cited, defendant's broken telegraph wire, which hung to the ground, came in contact with a third party's electric wire on the same pole, and a shock was communicated to plaintiff from the latter wire through defendant's wire, and the court held the defendant liable.

3. By special charge number 1, appellants asked the court to charge the jury as follows: "There being no testimony in this case that the injury to the plaintiff was proximately caused by the negligence of the defendants, you are therefore instructed to return a verdict for the defendants." The refusal of the court to give the instruction is assigned as error. In connection with this, we are asked to consider the sixth assignment, which complains of the court's refusal to give appellants' fifth special charge which, though argumentative, is in effect the same as the first.

We have stated in our preceding conclusions, which we think fully warranted by the evidence, the agencies and means by which appellee was injured. From the evidence upon which our conclusions are based we can not perceive how it can seriously be contended that appellant's negligence was not the proximate cause of the injuries sustained by the appellee. "The proximate cause of an event must be understood to be that which, in a natural and continuous sequence, unbroken by any new, independent cause, produces that event, and without which the event would not have occurred." Shearm. & Redf. on Neg., 5 ed., sec. 26.

"Where there is negligence, and injury flowing from it, and there is also an intermediate cause, disconnected from the negligence, and the operation of this cause produces the injury, the person guilty of the negligence can not be held responsible for the injury. The inquiry must always be whether there was any intermediate cause disconnected from the primary fault, and self-operating, which produced the injury. * * * Intervening agencies sometimes interrupt the current of responsible connection between negligent acts and injuries, but as a rule these agencies, in order to accomplish such result, must entirely supersede the original culpable act, and be in themselves responsible for the injury, and it must be of such a character that they could not have been foreseen or anticipated by the wrongdoer. If it required both agencies to produce the result, or if both contributed thereto as concurrent forces, the presence and assistance of one will not exculpate the other, because it would still be the efficient cause of the injury. The intermediate cause must supersede the original wrongful act or omission, and be sufficient of itself to stand as the cause of the plaintiff's injury, to relieve the original wrongdoer from liability. 'One of the most valuable of the criteria furnished us by the authorities, is to ascertain whether any new force has intervened between the fact accomplished and the alleged cause. If a new force or power has intervened of itself sufficient as the cause of the misfortune, the other must be considered too remote.' * * * The new force of power here would have been harmless but for the displaced wire, and the fact that the wire took on a new force, with the creation of which the company was not responsible, yet it contributed no less directly to the injury on that account." Ahern v. Telegraph Co., 22 Law Rep. Ann., 640.

The following quotation from the opinion on motion for rehearing shows the similarity of that case to the one under consideration. "The suspended telephone wire, while it was charged with electricity from contact with the electric wire, was not less dangerous than the electric wire itself would have been, similarly suspended as to the street." Here we have a case where the appellant negligently permitted an uninsulated wire to hang from their poles within a foot or two from a public street; they negligently permitted the wire above it, which was charged with electricity, to become abraded as to its insulation, and negligently suffered these two wires to become and remain connected by a smaller wire, which conveyed the dangerous current of electricity to the hanging wire, thereby endangering lives of persons on the street. Each of these negligent acts concurred and caused appellee's injuries. Had it not been for coming in contact with the hanging wire it would not have occurred. Railway v. Sweeney, 14 Texas Civ. App., 216, and cases cited. The court did not err in refusing to give the requested special charges.

The charge of the court is a correct enunciation of the principles of law applicable to the evidence, and none of the assignments which complain of it is well taken. Light and Power Co. v. Maxwell, 3 Texas Ct. Rep., 328; Perham v. Electric Co., 40 Law Rep. Ann., 800; Electric

Co. v. Simpson, 31 Law Rep. Ann., 566, note, and immediately succeed-
ing cases of same nature.

No error is assigned which requires a reversal of the judgment, and
it is affirmed.

*Affirmed.*

Writ of error refused.