## TEXAS & N. O. R. CO. v. SEAY. (No. 3226.)

(Court of Civil Appeals of Texas. Texarkana. May 5, 1926. Rehearing Denied May 27, 1926.)

Railroads ⚖️⟶348(6).

Evidence *held* to support recovery under doctrine of discovered peril for pedestrian's injuries at railroad crossing.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Action by T. D. Seay against the Texas & New Orleans Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood and Garrison & Watson, all of Houston, for appellant.

Fulbright, Crooker & Freeman, of Houston, for appellee.

LEVY, J. The appellee brought the suit for damages for personal injuries alleged to have resulted through the negligence of appellant. The front wheels of a box car ran over his right foot, so crushing the bones as to make necessary amputation just below the knee. The appellee pleaded discovered peril, besides other particulars of negligence, as

ground for recovery. The only issue submitted to the jury other than the amount of damages was:

"1. Could the employee or employees of the defendant, after they saw that the plaintiff was in a place of danger, and after it reasonably appeared to such employee or employees that he was not aware of his danger from the approach of the box car, and that he would not probably move out of danger before the car would probably strike him, in the use of every means then reasonably within their power, in the exercise of ordinary care, have caused said car and engine to be stopped before it struck the plaintiff? You will answer 'Yes' or 'No,' according as you find the facts to be."

The jury answered the question, "Yes." In keeping with the verdict of the jury, the court entered judgment for the appellee for the amount of damages awarded by the jury.

The only question presented on the appeal is as to the legal sufficiency of the evidence to support a verdict by the jury in the appellee's favor under the doctrine of discovered peril. A peremptory instruction was requested by appellant, and it was refused by the court. The injury occurred at Hardy street crossing in the city of Houston. The public street crosses the switching tracks of appellant from northeast to southwest. The tracks run about east and west. The street is a public throughfare, much used by vehicles and pedestrians. Appellee was walking to his regular work as an employee of a gas and fuel company. He went down Hardy street, the usual route for him to go, and had crossed several of the railway tracks when he stopped because a switch engine with cars attached had stopped on the crossing, blocking the passageway. When that switch engine moved off another switch engine, with a single box car ahead of it, and standing on another track north of and next to that track, started to move east in the direction the appellee was standing. The appellee was standing between the two tracks mentioned, facing south away from the engine on the north track. Owing to the noise and confusion existing, the appellee did not know of the switch engine's being on the north track. He was standing on the street, in close proximity to that track. It is undisputed that both the switching foreman and the fireman of that engine saw and realized the danger of appellee from a forward movement of that engine. The fireman on the engine testified:

"When the engine started up I was facing the cab. The engineer got the signal to move, and when he released the brakes I immediately began ringing the bell. As we started off I climbed ahead and I could see Mr. Seay down the track. I was almost sure he would get hit if he did not move. So I hollered to the engineer to stop. The train had not moved very far when I turned around in my seat box and saw this man. I suppose it had moved 5 or 10 feet in that time. I saw the man and realized that he was placed where he could get hit, and gave the warning to the engineer, and he proceeded to stop. That is all I know about it."

The engine was equipped with automatic brakes. The fireman stated that it would take a "few seconds or more to stop after we just get barely started." The switch engine was pushing a single box car. The engine was at a standstill before starting. At that time the east end of the box car, according to the evidence of some of the witnesses, was distant from appellee about 33 or 38 feet, and had to move forward that distance in order to strike appellee. After the car struck appellee it was stopped within the distance of 15 feet from him: that is, the east end of the car rested 15 feet from him. The appellee's leg was run over and crushed by the front trucks of the car. It would serve no useful purpose to further set out the details of the evidence. In the question considered, each case must rest for decision upon the particular facts proven. The real substantial question in the present case was, whether or not a switch engine, equipped with automatic brakes and shoving a single box car, starting from a standstill and moving only "5 or 10 feet," could be stopped within a less distance than 33 or 38 feet. The general issue became a question purely of fact for the jury, to be determined from all the evidence, physical facts, and surrounding circumstances. In considering the evidence and circumstances, the jury could bring to bear and apply such general or common practical knowledge as they may have had. The jury had a fair opportunity to deduce a just inference or to form a correct opinion from the narrative or description given by the witnesses. The engine and car had gained but little momentum in moving only "5 or 10 feet." The fireman said, "After we just get barely started" it would take only "a few seconds or more to stop." And automatic brakes would quickly bring about a stop under such circumstances, according to common knowledge, as the jury were capable of saying. The evidence authorizes the jury to infer that the engineer was informed and knew of appellee's peril in time to avoid striking him, with the means at hand, under the circumstances.

The judgment is affirmed.