## QUANAH, ACME & PACIFIC RY. CO. v. EBLEN et al.

No. 3845.

Court of Civil Appeals of Texas. Amarillo. Nov. 21, 1932.

Rehearing Denied Jan. 4, 1933.

G. E. Hamilton, of Matador, and C. Y. Welch, of Quanah, for appellant.

Schenck & Triplett and Bledsoe, Crenshaw & Dupree, all of Lubbock, for appellees.

HALL, C. J.

Appellee Eblen sued the Quanah, Acme & Pacific Railway for damages growing out of the alleged negligence of the defendant railway company which resulted in personal injuries to appellee and the destruction of an automobile truck owned by him.

He alleged that on the 7th of July, 1929, he was operating a gas and oil station situated on the east side of Eighth street in Paducah, and upon one of the appellant's side tracks; that on said day he was struck by a freight car while he was driving his truck across Eighth street; that his truck was knocked from the track, practically ruined, and he was pinioned under it, resulting in a broken arm and dislocated shoulder. He charges that several box cars were negligently shoved in on the side track and permitted to run wild; that the cars were running noiselessly along the track, striking appellee and his truck; that appellant's employees failed to sound the whistle or ring the bell or give any other warning of the approach of said cars.

He pleads in the alternative that such cars were pushed in on the side track by appellant's employees; that the cars were being pushed by an engine, and, through the negligence of said employees, he was damaged as alleged.

He also charged that his perilous position was discovered by said employees in time to have stopped the train by the use of proper care on the part of said employees; that appellant knew that the crossing in question was frequently used by the public; that said employees knew that their view of the crossing was obscured from the direction from which the train was approaching and it thereby became their duty to provide a flagman or brakeman on the front end of said box cars or at some place about said crossing, who could see and give signals to the engineer; that there was neither a flagman at the crossing nor any one on the front end of the cars who was able to see any person about to use said crossing. This is charged as negligence, together with the further acts of negligence in failing to sound the whistle or ring the bell; in failing to stop after discovering appellee's peril; in failing to keep a proper lookout ahead and have control of said loose cars. He further charged that the train was operating at an excessive rate of speed.

He sets out in detail the extent of his injuries, his suffering; that he incurred doctors' bills, nurse, and hospital fees, etc., which he itemizes. He alleges that he lost much time, had to hire an assistant to conduct his business, and was permanently disabled as a result of the accident and of appellant's negligence.

The Texas Indemnity Company intervened, alleging that it had issued a workmen's compensation policy to the Magnolia Petroleum Company, the employer of Eblen, under which Eblen was insured; that by the terms of such policy it was bound to pay and had paid Eblen the total sum of $2,380, together with medical treatment, hospital bills, operations, etc.; and that it was entitled to recover $500 as attorneys' fees, and to be reimbursed for all such payments and expenses.

The court awarded the indemnity company judgment in the sum of $3,832.36 to be de-

ducted from the amount of appellee's recovery, which was $8,100.

The appellant answered by general demurrer and special exceptions, a general denial, and specially alleged that, if appellee sustained any injuries, they were the result of his own contributory negligence in that he was well acquainted with the crossing, knew that appellant ran a train through Paducah about the time of day at which the accident occurred, knew that it frequently switched its train, setting out and picking up cars while switching over the crossing where the accident occurred; that its engineer sounded the whistle when the engine started in on the side track and that the bell was rung and kept ringing from that time until after the accident; that appellee's oil station was so situated that its warehouse, oil tanks, and fences were so constructed that appellant's employees could not see and did not know appellee or any one else was in the station grounds as the appellee approached on the side track; that appellee had driven his truck into the station grounds and left it standing on the southwest side of the warehouse; that appellee was in the warehouse drawing a can of oil at the time appellant's engine approached a box car standing on the side track a little east from said warehouse; that the engine stopped and coupled head-on to the car within a few feet of the warehouse while appellee was at work in said warehouse; that the bell was ringing and there were loud noises made in coupling and that the engine pushed said car ahead westward toward the crossing to get another car beyond the crossing and just as the box car being so pushed was approaching the crossing at a slow rate of speed, appellee suddenly dashed out from behind his warehouse on to the track in front of the moving car; that he neither stopped, looked, nor listened before going on to the track; that as he drove through the gate of his station grounds he was going west and then turned northward to cross the said track and at that moment the engine and box car were pushed southwestward almost in front of appellee and that a casual glance by him toward the north would have discovered the train in time to have avoided the collision; that it was customary and usual for said track to be used by appellant's freight trains in switching; that appellee knew that fact; that the northwest corner of appellee's warehouse is within a few feet of the track and therefore cuts off the view of appellant's engine crew so they could not see a person approaching the track from the direction of the oil station until such person was on or very near the track. Appellant further alleged that its conductor took his position on the north side of the side track just before the coupling was made and having looked up and down the street and seeing no one approaching the crossing, signaled the engine crew to come ahead; that in just the next moment appellee dashed out of his station gate and reached the crossing just as the box car did; that as soon as the employees on the engine discovered appellee's peril, they used every means at their command to stop the engine and avoid the accident and it stopped within a few feet after such discovery.

In response to special issues, the jury found, in substance, as follows: (1) That defendant's agents and servants operating the train blew the whistle at least eighty rods from the crossing and sufficiently near the same to be reasonably calculated to give warning to persons about to use the crossing; (4) that defendant's agents and servants operating the train in approaching the crossing rang the bell as they approached and continued to ring the same until the crossing was reached; (7) the said agents and servants in charge of the train failed to keep a proper lookout for Eblen and others about to go upon said crossing; (8) which failure was negligence on the part of defendant's agents and servants; and (9) was a proximate cause of the collision and injuries to Eblen; (10) that the engineer failed to exercise ordinary care to use all effective means within his power consistent with the safety of the train and its crew to avoid the collision after he discovered Eblen going on the crossing and after he realized Eblen's danger; (11) which constituted negligence and (12) was a proximate cause of the collision and injury; (13) that $7,500 would reasonably compensate the plaintiff for his injuries; and (14) that $800 was the reasonable market value of the automobile before the collision; and (15) $200 was its reasonable market value afterwards; (16) the jury found that Eblen, in approaching the crossing, failed to stop his truck a safe distance therefrom for the purpose of looking and listening for the approaching train; (17) that he was not guilty of negligence in failing to stop and look and listen; (18) that such negligence was not a proximate cause or a contributing cause to the injury sustained by plaintiff; (19) that Eblen failed to look for an approaching train as he approached the crossing and within a reasonable distance therefrom; (20) that his failure to look for the train was negligence; (21) and that his negligence was not a proximate cause or a contributing cause of the collision and injury; (22) that Eblen as he approached the crossing failed to listen for an approaching train; (23) which was not negligence; and (24) was not a proximate cause or contributing cause of his injuries.

From a judgment entered in favor of Eblen and based upon the verdict, the railway company appeals.

■ The court did not err in refusing to instruct a verdict for the appellant upon the theory that one crossing a railroad at a street intersection who failed to look and

listen for an approaching train was guilty of negligence as a matter of law.

The appellant relies upon the case of B. & O. Ry. Co. v. Goodman, 275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. 167, 56 A. L. R. 645. While the federal courts hold that an injured person is guilty of contributory negligence as a matter of law in going upon a public crossing of a railroad track without stopping, looking, and listening, that doctrine has been repudiated in G., H. & S. A. Ry. Co. v. Wells (Tex. Sup.) 50 S.W.(2d) 247, and the reverse of the rule stated in the Goodman Case is declared to be the rule in Texas.

■ The second contention is that the court erred in failing to instruct the jury that each issue should be answered solely with reference to the truth of such answer and that the jury should not concern itself about finding for or against either party.

Appellant cites no authorities, but Judge Dunklin said, in Stine Oil & Gas Co. v. English (Tex. Civ. App.) 185 S. W. 1009, 1013: "Nor can we say that there was reversible error in the refusal of the defendant's request for an instruction that the jury should find upon the issues submitted, without reference to their opinions as to the legal rights of the parties. When the jury took the statutory oath required to be administered to them, they must have understood their duty to be as stated in the requested instruction, and it cannot be presumed that they would be inclined to go contrary thereto in the absence of such instruction."

It is true that Judge Powell, in Southern Traction Co. v. Wilson (Tex. Com. App.) 254 S. W. 1104, 1106, said: "We will say, however, that this practice should be discouraged by the trial courts and the jurors warned, in the absence of mutual agreement of the parties litigant, to refrain from such practices. [A discussion by the jurors with reference to attorneys fees.] It is much better, as a rule, for jurors to get all of their evidence under the guidance of the court and in the presence of the attorneys for both sides."

Several of the courts have said that the giving of admonitory instructions by the trial judge is a salutary practice but we have found no case and appellant cites none holding that the failure of the trial judge to give admonitory charges constitutes reversible error and since it does not appear that in answering the issues submitted in this case that the jury was influenced by any other consideration or information than that elicited during the trial, certainly if error, it is harmless. Speer's Law of Special Issues, § 145.

■ The next contention is that the court erred in his definition of proximate cause, in failing to state that the negligent act complained of "must be the moving and efficient cause" of the injury complained of.

The definition given by the court is as follows: "The proximate cause of an injury, as the term 'proximate cause' is used in this charge, is meant some negligent act or omission which without the aid or intervention of any new or intervening cause, naturally caused the accident complained of and without which the injury would have not occurred and to be a proximate cause the act or omission complained of must have been such that a person of ordinary prudence should reasonably have anticipated that the injury complained of or some similar injury, might result therefrom."

We think the appellant's criticism of the definition is without merit. Definitions of proximate cause omitting the element complained of in this case have been approved in Hulen v. Ives (Tex. Civ. App.) 281 S. W. 350; Athens Electric Light & Power Co. v. Tanner (Tex. Civ. App.) 225 S. W. 421; Kirby Lumber Company v. Cunningham (Tex. Civ. App.) 154 S. W. 288; I. & G. N. Ry. Co. v. Schubert (Tex. Civ. App.) 130 S. W. 708; El Paso, etc., Ry. Co. v. Smith, 50 Tex. Civ. App. 10, 108 S. W. 988; Alice, etc., Telegraph Co. v. Billingsley, 33 Tex. Civ. App. 452, 77 S. W. 255; Wehner v. Lagerfelt, 27 Tex. Civ. App. 520, 66 S. W. 221.

■ The court, in defining "contributory negligence" stated that it was some act amounting to "a want of ordinary care and prudence." The appellant insists that the court erred in adding the words "and prudence." This objection is hypercritical, since prudence and care are synonymous. Standard Dictionary; Century Dictionary.

The fifth and sixth propositions are not briefed as required by the rules.

■ The next contention is that the court erred in submitting special issue No. 7 to the jury, asking if the defendant's servants failed to keep a proper lookout for Eblen or other persons who might be about to go upon the track, because the naming of Eblen was calculated to impress the jury with the fact that the defendant owed Eblen some special duty which it did not owe to the public generally. This criticism is also without merit.

■ Appellant insists that special issue No. 7 as further objectionable because the undisputed evidence shows that such proper lookout was kept by appellant's servants and employees and because there was no pleading raising the issue.

Appellant is in error in this contention because in the first count of the petition it is alleged that appellant was negligent in failing to have a man on the loose string of cars; that the defendant knew the character of the particular crossing; and that it was frequently used by the public and further knew that from the direction in which they were approaching the crossing the view was obstruct-

ed. That by reason of these facts it was the duty of defendant to cause a flagman or brakeman to be on the front end of the box car or at some place near the crossing who could see and give signals to the engineer and that no servants took such positions, which was negligence and the proximate cause of the injury. The engineer, being on the right-hand side of the cab, could not see to the left of the crossing. Milam, the brakeman, was on the north side of the engine pilot where he could not see the crossing and the defense of a want of proper lookout rests upon the testimony of Estes, the conductor, and of the brakeman. They were contradicted by plaintiff and his witnesses Brownlow, Sassaman, and Davidson, who testified that they did not see any man flagging at the time of the collision and since the testimony shows that the truck traveled seventy-seven feet from the Magnolia station gate to the crossing and Estes testified that he did not see the truck, though he was in a position to do so, the jury was not bound to accept appellant's testimony. They resolved the conflict in favor of Eblen and we cannot disturb their finding.

█ The next insistence is that the answer of the jury to the ninth interrogatory that the failure of appellant's servants to keep a proper lookout was a proximate cause of the collision and injuries, is unsupported by and is contrary to the evidence.

We overrule this contention. The evidence shows that the engine and car approached the crossing where the vision of appellant's servants of the crossing was obstructed by buildings; that the servants knew people were using the crossing frequently; that it was very unusual for a freight train to pass through Paducah on Sunday and the station agent and other witnesses testified they had never known of any switching of cars on the belt track on Sunday; conductor Estes testified that he was expecting people to cross the track at that point; the fireman Marsalis testified that in going down to the crossing he was looking ahead because he did not know but what people might be crossing; was sufficient to warrant the court in submitting the issue.

The tenth proposition is not briefed.

█ By the eleventh proposition the appellant insists that the court erred in submitting the issue of discovered peril because there was no evidence to raise the issue.

The petition charged that at the time of the accident the train was moving at an excessive rate of speed. This was denied by appellant's witnesses and there is evidence to the effect that the train could have been stopped in from four to twelve feet; that at the time Eblen's perilous position was first discovered and realized by the fireman and engineer, the west or front end of the box car was fifteen or twenty feet from the crossing and that after such discovery the train went a distance of more than thirty feet; that it first struck the truck and knocked it twelve or fourteen feet; that Eblen was not injured by the first impact, but that the train struck the truck again, resulting in the injuries complained of. It is true that the evidence conflicts upon the issue of discovered peril, and, though the jury found that Eblen was guilty of contributory negligence in driving upon the crossing under the circumstances, if the appellant discovered his perilous position in time to have prevented the injury, appellee's right to recover would not be defeated because of his contributory negligence. H. & T. C. Ry. Co. v. Stevenson (Tex. Com. App.) 29 S.W.(2d) 995; T. & N. O. Ry. Co. v. Seay (Tex. Civ. App.) 285 S. W. 923; Southern Pacific Co. v. Walker (Tex. Civ. App.) 171 S. W. 264; Ft. W. & D. C. Ry. Co. v. Houston (Tex. Civ. App.) 185 S. W. 919. It has been held that a finding by the jury that the injured party was guilty of contributory negligence is not, under some circumstances, in conflict with a finding that the defendant's servants failed to keep a proper lookout. H. E. & W. T. Ry. Co. v. Sherman (Tex. Com. App.) 42 S.W.(2d) 241; St. L., B. & M. Ry. Co. v. Cole (Tex. Com. App.) 14 S.W.(2d) 1024; N. T. T. Co. v. Weed (Tex. Com. App.) 300 S. W. 41. Whether there is a conflict depends upon the nature of the particular case and the evidence introduced.

Special issue No. 10 is: "Do you find from a preponderance of the evidence in this case that the engineer in charge of and operating the train in question failed to exercise ordinary care to use all the effective means within his power consistent with the safety of the train and its crew to avoid the collision after he discovered the plaintiff, W. E. Eblen, if he did, about to go upon the crossing and realized his danger?"

The appellant attacks this issue and the jury's finding thereon upon several grounds: (1) Because there was no evidence authorizing such an issue; (2) because the court assumes that the engineer did, in fact, discover plaintiff's peril in time to have avoided the accident without having first submitted an issue whether the engineer did make such discovery; and (3) because the answer is contrary to the evidence and has no support therein; and, finally, because the issue is followed by a general charge which should not have been given in a case submitted upon special issues.

There is evidence to the effect that the train was moving at from four to six miles per hour immediately preceding the collision and that it could have been stopped by the use of reasonable effort in from four to twelve feet; that when the fireman saw Eblen approaching the crossing, the west end of the box car was fifteen or twenty feet from

the crossing and that after such discovery the train went a distance of more than thirty feet; that it struck the truck first and knocked it twelve or fourteen feet and then struck it again, which caused the injuries complained of. The evidence does not show where Eblen was when the fireman first discovered him approaching the crossing, but it does show that the fireman immediately called to the engineer to stop, that he was about to run into a truck. The fireman testified that he hallooed to the engineer as soon as he saw that the truck was going on to the crossing. This establishes the fact of the discovery of plaintiff's danger or, in other words, that he was about to enter a perilous situation. H. & T. C. Ry. Co. v. Finn, 101 Tex. 511, 109 S. W. 918.

As stated in Texas Central Railway Co. v. Dumas (Tex. Civ. App.) 149 S. W. 543, 547: "To discover that a party is about to enter upon the track under such conditions as that he will be run over by the train is as much a discovery of his peril as if he was at said time actually upon the track."

It is true that the engineer and fireman both testified that they resorted to every means within their power to avoid the collision, but the jury was not bound by this testimony if there were circumstances and other evidence which tended to contradict it and it became an issue of fact for the jury to determine whether the engineer used the required means to avoid the accident after the fireman saw the plaintiff was going into a place of danger and called to the engineer to stop.

After submitting issue No. 10, the court charged the jury as follows: "In connection with this issue No. 10, as explanatory thereof, you are instructed that before you can find for the plaintiff upon the issue of discovered peril submitted to you by the Court, you must find from a preponderance of the evidence that the engineer operating the engine actually discovered the peril of the plaintiff Eblen at such a distance from the track that he could with all means at his command, by the exercise of ordinary care, have prevented the accident and in connection therewith you are further instructed that you cannot find for the plaintiff upon the issue of discovered peril on the ground that the engineer in the exercise of ordinary care could have discovered the plaintiff in time to have prevented the accident or that he was negligent in not discovering the plaintiff sooner, if he did, than he actually did discover him, as the duties of the operators of the engine did not arise until his peril is actually discovered."

It is insisted that it was error for the court to give this general charge under the circumstances.

This is a general charge and the court erred in giving it. The rule is that under the statute providing for the trial of cases upon special issues, a charge instructing the jury as to the law pertaining to any phase of the case, excepting explanations and definitions allowed by statute, constitutes reversible error.

As said in Humble Oil & Refining Co. v. McLean (Tex. Com. App.) 280 S. W. 557, that in the trial of a special issue case, if instructions not authorized by the statute are submitted, injury to the objecting party is presumed and the judgment should be reversed unless it clearly appears that no injury resulted to the complaining party. In that case it is also held that, where a general charge is given in a case submitted upon special issues, it is not necessary that the objecting party should point out specifically the prejudicial effect of the charge; it being sufficient to show that the charge is a general one not authorized by statute and that an objection is based on that ground alone.

The general charge given in the instant case violates the rule just stated. Moreover, it is upon the weight of the testimony and is further objectionable because it indicates to the jury the effect of the answer which will be made to the special issue. West Texas Utilities Co. v. Renner (Tex. Com. App.) 53 S.W.(2d) 451, 456.

We deem it unnecessary to consider in detail the remaining propositions. They are in part without merit. Others present matters which will probably not arise upon another trial.

Because the court gave the general charge following special issue No. 10, the judgment is reversed and the cause remanded.

### On Motions for Rehearing.

The only point which we think it is necessary to discuss is that raised in the appellees' motion for rehearing relating to special issue No. 10. The issue is set out in full in the original opinion and submits the question of discovered peril. Immediately following this issue the court charged the jury as follows: "In connection with this issue No. 10, as explanatory thereof, you are instructed that before you can find for the plaintiff upon the issue of discovered peril submitted to you by the Court, you must find from a preponderance of the evidence that the engineer operating the engine actually discovered the peril of the plaintiff Eblen at such a distance from the track that he could, with all means at his command, by the exercise of ordinary care, have prevented the accident; and in connection therewith you are further instructed that you cannot find for the plaintiff upon the issue of discovered peril on the ground that the engineer in the exercise of ordinary care could have discovered the plain-

tiff in time to have prevented the accident or that he was negligent in not discovering plaintiff sooner if he did, than he actually did discover him, as the duties of the operators of the engine did not arise until his peril is actually discovered."

We held that this was a general charge and think there can be no question about the correctness of that holding.

Appellee calls to our attention the fact that the language quoted is taken verbatim from the case of H. E. & W. T. Ry. Co. v. Sherman et al. (Tex. Com. App.) 42 S.W.(2d) 241. We find that this statement is true, but by a careful consideration of the Sherman Case both as reported by the Commission of Appeals and by the Court of Civil Appeals [10 S.W. (2d) 243], we find that this charge was not attacked in either court upon the ground that it was a general charge and upon the further ground that it clearly indicated to the jury what the result of their answers would be. In other words, the charge was not challenged in the Sherman Case as it is here and we are convinced that, if the objections had been made to it in that case that are urged here, the court would have condemned it. The books are full of cases which hold that an explanation or definition which clearly indicates to the jury as to which party will be benefited by a particular answer, is erroneous. A number of these have been cited in Texas Indemnity Ins. Co. v. Davis (Tex. Civ. App.) 32 S.W.(2d) 240. Measured by the rules laid down by the Commission of Appeals in Humble Oil & Refining Co. v. McLean, 280 S. W. 557, 559; McFaddin v. Hebert, 118 Tex. 314, 15 S.W.(2d) 213, and numerous other cases, the explanation given by the court which followed special issue No. 10 is clearly a general charge. In the Humble Case, supra, Judge Harvey held that a general charge is an instruction given by the court to the jury as to the law pertaining to the case or any phase thereof. The charge given in the instant case certainly comes within this definition. Judge Harvey further held that "for a charge to be a general one, it is not necessary that it be one submitting an issue of fact for determination by the jury, with instruction that if they find such facts to exist to find verdict thereon in favor of one of the parties." Of course, if the charge instructs the jury as to the law and further tells them that, if they find certain facts to exist that they can or cannot find in favor of one of the parties, it must necessarily be a general charge and the charge under consideration does that very thing. It begins by saying that "before you can find for the plaintiff" and later on in the same paragraph says "you are further instructed that you cannot find for. the plaintiff," etc.

Believing that our original opinion and disposition of the case is correct, both motions for rehearing are overruled.