## J. H. ROBINSON TRUCK LINES, Inc., et al. v. RAGAN.

### No. 11892.

Court of Civil Appeals of Texas. Galveston.
July 24, 1947.

Rehearing Denied Oct. 9, 1947.

Kemp, Lewright, Dyer, Wilson & Sorrell, of Corpus Christi (W. M. Lewright, of Corpus Christi, of counsel), for appellants.

Earl Cox and Wm. States Jacobs, Jr., both of Houston, for appellee.

CODY, Justice.

This is a personal injury suit, brought by appellee to recover damages resulting from the alleged negligent operation of a truck belonging to appellant, J. H. Robinson Truck Lines, Inc., by appellant Canorroe on the Houston-Galveston Highway on the night of February 15, 1946. Based on the jury's verdict the court rendered judgment for appellee against appellants for $40,000.

Appellants predicate their appeal on six points. Their first four points complain that, with respect to Special Issue No. 24—which was the damages issue—the court failed to affirmatively instruct the jury that the burden of proof rested upon plaintiff to establish all of the elements of his damages by a preponderance of the evidence. By their point 5 appellants complain of the court's refusal to give a certain admonitory instruction. By their point 6 they complain that the court erred in refusing to grant a new trial because of prejudicial argument by appellee's counsel, Mr. Earl Cox, in appellee's closing argument to the jury.

We must overrule appellant's points 1 to 4 inclusive. The damages issue read, in part, as follows: "What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence, will fairly and reasonably compensate the plaintiff, Elijah David Ragan, for the personal injuries, if any, sustained by him as a direct and proximate result of the collision between his automobile and the defendants' truck, taking into consideration the following elements of damages and none other:"

The issue then sets out elements "a", "b", "c", and "d". For present purposes we need only set out element "a" of the special issue as given: "(a) Such physical pain and mental suffering, if any, as the plaintiff Elijah David Ragan may have sustained in the past and until the trial of this cause as a proximate result of his injuries, if any."

It is appellants' contention that element "a" should have contained, in addition to the foregoing, words to make it read as follows: "(a) Such physical pain and mental suffering, if any, *as you may find from a preponderance of the evidence the plaintiff * * *"*, etc.

Appellants' criticism misconceives the function served by the inclusion of the elements of damage in the issue. The issue is a complete one *without* the inclusion therein of the elements of damage. But in order to insure against the jury allowing compensation for injuries which are not recoverable, they are instructed to consider only the elements of damage specified. Such restriction is placed in the issue for the benefit of the defendant, as a limitation on the nature of damage that may be considered in awarding compensation. The issue as given was correct, and in standard form. See 13 Tex.Jur., 456-460. This brings us to the consideration of appellants' point 5.

**664**

Miss Billie Moon, a witness for appellants, testified as to the location of the flares with respect to the parked truck belonging to J. H. Robinson Truck Lines, Inc., which appellants' evidence showed the driver had set out when he left the truck some 15 minutes prior to the collision. In the closing argument appellee's counsel, Mr. Cox, made the following statements, and the following proceedings were had:

"Let's consider, first, this little lady, Miss Billie Moon, that counsel relies on so strenuously.—To test her recollection further, I asked her about the flare behind the truck; she was uncertain about that, she didn't know about the lights on the back of the truck. She was certain about a flare in front, but she was uncertain about any flare in the back of the truck, furthermore—

"Mr. Lewright (of counsel for appellants). We object to that statement. Miss Moon was not uncertain about the flare back of the truck. All she said was, after they drove up she looked to see if it was still there.

"The Court: I overrule the objection.

"Mr. Cox: She said, 'I can't say whether the lights on the truck were burning or not. I am not positive there was a flare behind the truck.' I write shorthand and I wrote it down when she said it."

At the conclusion of Mr. Cox's argument, the following proceedings occurred:

"Mr. Lewright: In behalf of the defendants, we move the court to instruct the jury to disregard that portion of Mr. Cox's argument in which he said he wrote shorthand and had taken down the testimony of Miss Moon; and we also ask the court to inform the jury that they call Mr. Watkins (the court reporter), should they desire the testimony of Miss Moon, Mr. Burkett, or any other witness, and have him read it to them.

"Mr. Cox: It is agreeable with me to have the court instruct the jury to disregard my statement.

"The Court: We are not interested in what Mr. Cox said he took down. Gentlemen, don't consider that statement for any purpose in this case. I overrule the request about reading the testimony. We will wait until we get to that."

"Mr. Lewright: I except."

We overrule appellants' point 5, which complains of the court's refusal to instruct the jury that, should they so desire, in considering their verdict, they had the right to call the court reporter to read to them the testimony of Miss Moon so they might determine that her testimony was contrary to the unsworn testimony of appellee's counsel. The gist of the complaint is that the court refused to advise the jury, upon appellants' request, that if they wished they might have the court reporter read them Miss Moon's testimony in certain respects. Whether or not an admonitory instruction should be given is a question addressed to the court's sound judicial discretion. See Quanah, A. & P. R. Co. v. Eblen, Tex.Civ.App., 55 S.W.2d 1060, 1063, writ refused. Furthermore, it was not made to appear affirmatively that the jury was in disagreement as to the statement in question by Miss Moon. Rule 287, Texas Rules Civil Procedure, provides in part: "If the jury disagree as to the statement of any witness, they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness' testimony on the point in dispute; * * *." Thus the language of the rule indicates that even where the jury is in disagreement as to the statement of a witness, and apply to the court to have same read to them, it would not be error for the court, in the exercise of a sound judicial discretion, to decline such request. See Standard Supply & Hardware Co. v. Christian et al., Tex.Civ.App., 183 S.W.2d 657 (writ refused).

Appellants' point 6 reads as follows: "The error of the trial court in refusing to grant appellants a new trial herein, because of the highly improper and prejudicial argument made by Mr. Earl Cox, one of counsel for appellee, in the closing argument of appellee herein to the jury, at which time Mr. Cox gave the jury his unsworn testimony that by the use of a magnifying glass (and one of which he then held in his hand and exhibited to the jury and then left upon the counsel table in

the presence of the jury during the entire time of such argument, but which was never furnished to the jury for their use in the jury room during their deliberations upon their verdict), it could readily be seen that certain pictures, which had been introduced in evidence by appellants, disclosed that certain lights which were situated upon the back end of appellants' truck were not burning at the time the pictures were taken, such unsworn testimony being directly contrary to the sworn testimony of appellant Canarroe, the driver of the truck, and one of the material issues in the case having been whether such lights were or were not burning at the time such pictures were taken, and which unsworn and improper testimony directly influenced the jury in returning their verdict in this cause whereby they found that at the time of the accident, a few minutes prior to the time such pictures were taken, the lights upon the rear end of appellants' truck were not burning."

We overrule the point.

█ One of the grounds urged by appellee against appellants as actionable negligence was the alleged failure of appellant Canarroe, driver of the truck, to have lights on the rear thereof burning at and immediately prior to the time of the collision. Said appellant testified that, when he left the truck parked on the highway, which was some 15 minutes before appellee ran into it, all the lights with which it was equipped were burning. He further testified that when he returned, about 15 minutes after the collision, all of said lights were burning except for the tail-light and the left rear red clearance lamp, and that these had been knocked out and broken when appellee's car struck the rear end of the trailer. He further testified that defendants' (i. e. appellants') Exhibits A, B, G, and H, were pictures which were taken prior to the time that the wrecker arrived at the scene of the accident, which was only a few minutes after the accident; and that at the time said photographs were taken, all of said lights on the truck and trailer, except as aforesaid, were burning, and that said pictures were taken by "flash light".

Mr. Homan was the photographer who took the pictures. He was called by appellee to testify. He testified as to what the pictures disclosed with reference to what lights on the truck were burning when the pictures were taken, and as to what the pictures disclosed as to the location of the flares with reference to the position of the truck. He furthermore testified from his independent recollection relative to what lights were on, and relative to the flares.

In his closing argument to the jury for appellee, Mr. Cox discussed this evidence. To said argument, and to certain proceedings, the appellants were allowed their bill of exception No. 1. No objection was taken at the time the matters referred to in the bill occurred, nor was any objection urged thereto until the motion for new trial. The bill is exceptionally long, filling about eight pages of the transcript. It shows that, among other things, Mr. Cox said: " * * * Now, why didn't counsel, he has the five pictures but only produced two, why didn't he put this one in evidence, the picture of the front of the truck? I will tell you why. (At this point in his argument Mr. Cox reached into his coat pocket and pulled out a magnifying glass, about three inches in diameter, with a four inch handle attached thereto, and, in making the argument hereinafter detailed, exhibited defendants' exhibits Nos. G and B to the jury, and held the magnifying glass in front of each of these exhibits, looking through the glass at the exhibits, and then, after making the argument hereinafter detailed, laid the magnifying glass down on the counsel table in the presence of the jury and such magnifying glass remained on said counsel table and in the presence of the jury during the entire remainder of Mr. Cox's argument, and until the jury had completely retired to the jury room to commence their deliberations upon the verdict). *I have a magnifying glass here, and if counsel has no objections, and if the court will permit, I want you to take it to the jury room with you and you can see the things better.* Here is Mr. Lewright, in all his fairness and courteous dealings with us yokels, here is why he didn't put the picture in evidence, it shows the head-

lights are not burning. (At this point Mr. Cox exhibited Exhibit G to the jury and held up the magnifying glass in front of Exhibit G, and looked through the glass at Exhibit G. (Emphasis supplied).

"Mr. Lewright: I object, the witness, Homan, said the headlights were burning.

"The Court: I overrule the exception.

"Mr. Lewright: Note my exception.

"Mr. Cox: The picture shows—I think I know a burning light when I see it. Further, by looking at it up here (still exhibiting Exhibit G and looking at Exhibit G through the magnifying glass in the presence of the jury), the picture shows that the cab light, the parking lights, one on each side, those on the tractor, they are burning. When you look at it through the magnifying glass you will see those two lights are burning, and it is easy to see. When you get back to the trailer, when you get to the trailer you try to find any kind of light on the front of that trailer that is burning. (And at this point Mr. Cox picked up Exhibit B, the picture of the rear end of the trailer, and exhibited same to the jury and looked at it through the magnifying glass, in the presence of the jury). So the lights on the trailer were not burning, neither on the front or the back. (Counsel then picked up Exhibit G again and exhibited it to the jury, the remainder of the argument complained of being with reference to Exhibit G). You have got two globes up there but you can see they are not burning. That is why you didn't get to see that picture until counsel in his desperation, in order to discredit his own photographer, brought this picture out, to show that the flare was not where the photographer said—.''

The bill goes on to show that, as the jury was filing out to the jury room, *one of the jurors turned and in an audible voice asked if the jury would be permitted to take the magnifying glass into the jury room.* After the door of the jury room was closed, *the court inquired of Mr. Lewright, counsel for defendants, what he desired to be done about the request of the juror. Whereupon defendants' counsel replied that he had no comments to make.* The court then instructed the bailiff not to take the magnifying glass to the jury room, and the jury did not have the magnifying glass during their deliberations.

The bill of exceptions further sets out the statement made by Mr. Lewright in his argument preceding the argument of Mr. Cox, to the effect that there had been a flare alongside the truck, but that plaintiff had hit it and knocked it out. That plaintiff's counsel got Homan to testify that he thought it was there, but that "you can't see it in this picture (at this point counsel showed to the jury defendants' Exhibit G) it was right in behind this truck, 'it was right here', and he (Homan) has got the effrontery to point to this little spot on that photograph and tell you that is a flare.

"Mr. Cox: Let's see which one you are pointing to.

"Mr. Lewright: That little one right there (Indicating the bright object immediately in front of the left dual wheels of the trailer shown in the photograph marked defendants' Exhibit G.)" The bill goes on to indicate that Mr. Lewright said of Mr. Homa: "One minute he would tell you that that photograph would show up these lights, another minute he would tell you it would not: one minute he would tell you the flare was there in one place, another he would tell you it wasn't * * * Gentlemen of the jury, what happened to that flare? Why doesn't it show up in these pictures? Why doesn't it show up."

The bill goes on to state that Mr. Lewright did not use a magnifying glass, and did not state what defendants' Exhibits B and G did or did not disclose when viewed with a magnifying glass.

The gist of the complaint urged by appellants in their point 6 is that Mr. Cox, by telling the jury what the pictures disclosed when examined with a magnifying glass, was thereby guilty of giving unsworn testimony. And it is further appellants' contention that had they objected thereto and requested the court to instruct the jury not to consider same, such action would have accentuated the error. Because the jury would have concluded that appellants' counsel was attempting to prevent the jury from ascertaining the truth

by the use of a mechanical instrument, readily available for the purpose, and that appellants did not know, and do not now know, whether the use of a magnifying glass would show the matters testified to by Mr. Cox, and that it was not incumbent on appellants, in the absence of sworn testimony before the court to support such argument, to object to said statements, and thereby seriously prejudice themselves before the jury.

■ Conceding for the sake of argument, that the argument in question was improper, the duty rested on opposing counsel to object to it, unless the argument was such that instruction from the court could not cure it. Texas & N. O. R. Co. v. Sturgeon, 142 Tex. 222, 177 S.W.2d 264, 267; See also the Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054, 1055. It cannot be said that the error (if it was such) was one that could not be removed by an instruction to the jury not to consider same. It was not prejudicial in the sense that it appealed to the passions or prejudices, nor did it set up any wrong standard which might have confused the jury. Boiled down, we think that appellants' argument that they could not risk objecting to the use by Mr. Cox of a magnifying glass in examining the pictures before the jury comes to this: That they did not foresee that the pictures would be subjected to so searching and critical examination. Yet it is a matter of common knowledge that, where there is a question as to what is contained in a picture, by magnifying it the details will be made to appear more clearly than to the unaided eye.

In point of fact the counsel of both sides examined and commented on the pictures before the jury. It was proper that this be done. The use of a magnifying glass merely aids the eye. One does not have to be an expert to use a magnifying glass. It has frequently been held that the use of a magnifying glass by a jury in their deliberations on the evidence is not error. It was held in Hatch v. State, 6 Tex.App. 384, that the use by a jury of a magnifying glass in the examination of exhibits which had been previously offered in open court merely aided in the understanding of the evidence, and did not constitute the reception of new evidence. To the same effect see Alexander v. Blackburn, 178 Ind. 66, 98 N.E. 711; Morse v. Blanchard, 117 Mich. 37, 75 N.W. 93; Barker v. Incorporated Town of Perry, 67 Iowa 146, 25 N.W. 100; Kannon v. Galloway, 2 Baxt. Tenn., 230; State of Washington v. Everson, 166 Wash. 534, 7 P.2d 603, 80 A.L.R. 106; In re Thomas' Estate, 155 Cal. 488, 101 P. 798; Titus v. State, Sup., 49 N.J.L. 36, 7 A. 621; 64 C.J. 1033; 53 Am.Jur. 663; Id. 644. Appellants have cited no cases holding to the contrary.

In State v. Wallace, 78 Conn. 677, 63 A. 448, it was held: "It is not necessarily improper for counsel, during or after argument, to state that the use of a magnifying glass which he held in his hand will show upon the photograph an appearance * * * tending to support his claim as to a matter in dispute, and it is not error for the court to find and hold upon objection that such statement in that case is not improper." In the cited case the jury also had the magnifying glass in their retirement. Upon principle there is no difference between an attorney discussing pictures from an examination of them by his natural sight, and from an examination of them with the aid of a magnifying glass, where he makes the magnifying glass available. In either case the court, jury, and opposing counsel can check such examination. We do not hold that the court might not, in the exercise of discretion, forbid such examination if the facts warranted.

Appellants having presented no reversible error, the judgment is affirmed.

Affirmed.